## Wytheville.

## HILL'S ADM'RS AND OTHERS V. HILL AND OTHERS.

### June 10, 1920.

1. LEGACIES AND DEVISES—*Ademption—Intention of Testator.*—In case of total loss or destruction of the thing bequeathed, the intention of the testator as to whether or not this constitutes an ademption of the legacy is not material, for in such a case the ademption results because the testator does not have any power at his death to dispose of the subject. But, on the other hand, it would seem to be a sound rule that a mere change of the name and form of the thing bequeathed, or a mere change in the character of the security bequeathed, will not necessarily work an ademption, and the result may in such cases depend upon the intention of the testator.

2. LEGACIES AND DEVISES—*Ademption—Collection of Specific Debt.*— Where there is nothing else in a case except the mere fact that the testator gave a specific evidence of debt and afterwards collected the same, it presents the case of a specific legacy subsequently adeemed.

3. WILLS—*Construction—Intention of Testator—General Purpose.*— It is quite true that the intention of a testator must be gathered from the words actually used in the will, but it will not do to subordinate a plain general purpose or plan to an apparent particular intent, or to isolate the words of a single clause from the circumstances under which they were used, the relationship of the testator to the beneficiaries, and the general testamentary scheme as disclosed by a view of the whole instrument.

4. WILLS—*Construction—Uniform Justice.*—Uniform justice is better than strict consistency, especially when dealing with the language of a will, because the testator necessarily confides his meaning to an instrument which courts of equity are sacredly enjoined to interpret justly as between him and those he leaves behind, should controversy arise, death having closed his own lips.

5. WILLS—*Construction—General or Specific Legacy.*—Courts will not construe legacies as specific unless they are clearly so intended. The courts are so desirous of construing the be-

quest general that, if there be the least opening to imagine that the testator meant to give a sum of money, and referred to a particular fund only, as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security.

6. WILLS—*Construction—General or Specific Legacy.*—The rule that legacies are not to be construed as specific unless such is the clear intention of the testator, is to be especially regarded where to hold a legacy specific would result in an inequality among those whom the testator would naturally be expected to treat with equality.

7. WILLS—*Construction—General or Specific Legacy—Case at Bar.*—In the instant case the testatrix plainly intended to divide her estate in four principal parts of substantially equal amounts for the benefit, respectively, of her three sons and the children of a deceased son. She made up the fund for the grandchildren from two amounts, first, $1,700, a debt due her and afterwards collected by her and invested in a certificate of deposit held by her at her death, and $300 from her general estate, but the subsequent directions as to the time, manner, and amounts in which the total sum was to be paid to these grandchildren indicated that she had in mind a definite pecuniary provision for them, and this purpose on her part was as plainly indicated as if she had expressed it in so many words. The fact that she preserved the fund and the certificate of deposit was significant as throwing light upon her meaning in making the provision for the grandchildren.

*Held:* That the legacy to the grandchildren was not specific, and that the collection of the debt and investment in the certificate of deposit did not constitute an ademption, but that testatrix expected the debt, or its proceeds, to furnish a convenient source for the payment of the greater part of the total legacy.

8. PAROL EVIDENCE—*Practical Subsequent Construction—Contracts, Conveyances and Wills.*—In contracts and conveyances *inter vivos*, it is competent to introduce parol proof to show the practical subsequent construction which the parties themselves have placed upon the written instrument in question. There can be no good reason why the same rule should not apply with reference to the conduct of a testator subsequent to the making of the will. Indeed, it would seem that the rule ought to apply in the latter case with even more propriety and force than in the former.

9. WILLS—*Construction—General or Specific Legacy—Parol Evidence—Case at Bar.*—Parol evidence of the circumstances,

situation and connection of the testator, and his transactions between making his will and his death, are admissible to throw light on his intention. Applying this rule to the instant case, there can be no doubt that the testatrix, in the first instance, had in mind a general testamentary scheme under which the children of her deceased son would get $2,000 of her estate. In this view the legacy to her grandchildren may very properly be treated as general rather than specific.

Appeal from a decree of the Circuit Court of Halifax county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*McKinney & Settle* and *M. B. Booker*, for the appellants.

*Jas. H. Guthrie*, for the appellees.

KELLY, P., delivered the opinion of the court.

This appeal involves the construction of the second clause of the will of Mrs. Mary A. Hill, which is as follows:

"2nd. I give and bequeath to the children of my son, A. P. Hill, the debts due by him and which are secured by a vendor's lien retained in the deed of conveyance made to him by Margarette S. Turpen and duly recorded in the proper office of the city of Louisville, Kentucky, conveying to him a lot of land with improvements thereon situated in the said city, which said debts, so secured, amount in the aggregate to the sum of seventeen hundred dollars, $1,700.00, principal, and which have been duly assigned and transferred to and are now held by me. I also give and bequeath to the said children the sum of three hundred dollars, $300.00 to be paid by my executor hereinafter named. I do hereby nominate and appoint my sons, John R. Hill and

T. P. Hill, testamentary guardians of the said children, and request that no security be required of them on their qualification as such. I authorize and direct said guardian to pay to any of the said children as they come of age, or marry, their respective shares of said bequest to them to which they, or any of them, may be entitled to on their arriving at the age of twenty-one (21) years. Should any of the said children die before reaching twenty-one (21) years, or marriage, then the shares to which they would have been entitled to shall be equally divided among the surviving children.

"I desire and do so direct that the said guardians shall keep the buildings on said lot of land properly insured, the premiums to be paid from the money coming to their hands."

The will was written in 1907, and the testatrix died in 1913. In the meantime Mrs. Hill foreclosed the lien and collected the $1,700.00 debt mentioned in the above clause, but preserved the proceeds in the form of a bank certificate of deposit. After her death a question arose between the residuary legatees and the children of A. P. Hill as to whether the collection of the debt by the testatrix in her lifetime worked an ademption of the legacy to them as provided in the second clause of the will.

The principal question in the case, and the one to which the argument before us was exclusively addressed, is whether the $1,700 bequest in the second clause constituted a specific legacy. If it did constitute such a legacy, there may still be some question as to the effect of the collection of the fund. If, on the other hand, the bequest is to be considered as either a general or a demonstrative legacy, then it is clear and is conceded that no ademption resulted.

The circuit court "being of opinion that according to the true construction of the last will and testament of Mary A. Hill, deceased, by the second clause thereof, she be-

queathed to the complainants, the children of her deceased son, A. P. Hill, the sum of two thousand ($2,000.00) dollars, and that the sum of $1,700.00, a part of said bequest was not a specific legacy of the debts due to her from the estate of her said deceased son, but was a demonstrative legacy; that is to say, it was a general legacy of $2,000, payable out of the general assets, and made up of the two items named in said second clause of said will, but with the *appropriation* as to the sum of $1,700 thereof, of the said debts, amounting to that sum due to her from the estate of her said deceased son, A. P. Hill, as a primary fund, for the satisfaction of said legacy to that extent, and was not adeemed by the collection of the said sum of $1,700 by the testatrix in her lifetime," entered the decree accordingly in favor of the children of A. P. Hill from which this appeal was allowed.

The testatrix had, when she wrote the will, three sons, four grandchildren (the beneficiaries under the second clause) and three step-children. Her total estate was worth about nine thousand dollars. By the third clause of her will she created a trust fund of $2,000 for the benefit of one son; by the fourth clause she gave to the three step-children $175 each, or a total of $525; and by the fifth clause she gave the residue of her estate to the other two sons, one of whom she designated as her executor. It thus appears from the face of the will that she intended to divide the bulk of her estate into practically equal portions of $2,000 each, giving one portion to each of the three living sons and one to the children of the deceased son as a class.

After the execution of the will the testatrix became dissatisfied with the $1,700 lien on the Louisville property. Subsequent to the death of her son, A. P. Hill, in February, 1915, his wife and children had occupied the property as a home for a few months and then moved to Washington, where they were living at the time the will was made. The

rents of the property were not satisfactory, the repairs were expensive, and Mrs. Hill enforced the lien and collected the debt with the full acquiescence of her son's widow. A. P. Hill appears to have left no estate. The widow supported herself and children in Washington, by keeping boarders and roomers. She also had at times, before the Louisville property was sold, been called on to supplement from her own earnings the rents therefrom to keep up the interest payable to her mother-in-law, Mrs. Mary A. Hill, on the $1,700 mortgage. The relations between the mother-in-law and the daughter-in-law were cordial and affectionate, and the former was greatly devoted to and concerned about the grandchildren. From the sale of the property Mrs. Hill realized $1,792, which was paid to her by a check on January 31, 1910. This check was paid on February 8, 1910, through the First National Bank of South Boston, and on the same day she received from that bank a certificate of deposit for $1,722. While this certificate was renewed once or twice, and represented at the time of her death about $40.00 more than the original, she kept this fund intact in the form of a certificate of deposit until her death, and in that form it passed to her executor and was collected by him as a part of her estate.

[1] We need not decide whether the ademption of a specific legacy by the collection of the debt bequeathed can be made to depend upon the intention of the testator. The authorities are apparently not entirely harmonious on this subject. It is of course true that in case of total loss or destruction of the thing bequeathed, the intention of the testator is not material, for in such a case the ademption results because the testator does not have any power at his death to dispose of the subject. But on the other hand it would seem to be a sound rule that a mere change of the name and form of the thing bequeathed, or a mere change in the character of the security bequeathed will not neces-

sarily work an ademption, and the result may in such cases depend upon the intention of the testator. 3 Min. Inst. 611; *Skipwith* v. *Cabell,* 19 Gratt. (60 Va.) 758, 795; 40 Cyc. 1921; 1 Am. & Eng. Ency. L. (2d ed.), 625.

Applying these principles, if we treated the gift in question here as a specific legacy, we might reasonably hold that no ademption was intended and none effected because the testator evidently preserved the original investment, under a mere change of form in the security, and did not intend by the change to divert it from the purpose indicated in the second clause of the will.

But this question does not arise if the gift be treated, as we think it should be, as a general or demonstrative legacy.

[2-4] If there were nothing else in the case except the mere fact that the testator gave a specific evidence of debt, and afterwards collected the same, then we would have a specific legacy subsequently adeemed. 2 Redfield on Wills, p. 151; 40 Cyc. 1920; *Hood* v. *Haden,* 82 Va. 588, 599; *Walton* v. *Walton,* 7 Johns. Chy. (N. Y.) 258, 11 Am. Dec. 456, 458. But we are not here confined to such a narrow view. It is quite true that the intention of a testator must be gathered from the words actually used in the will, but it will not do to subordinate a plain general purpose or plan to an apparent particular intent, or to isolate the words of a single clause from the circumstances under which they were used, the relationship of the testator to the beneficiaries, and the general testamentary scheme as disclosed by a view of the whole instrument. 40 Cyc. 1393, 1413; *Whittle* v. *Whittle,* 108 Va. 22, 60 S. E. 748. Nor must we forget that "uniform justice is better than strict consistency," especially when dealing with the language of a will, because "the testator necessarily confides his meaning to an instrument which courts of equity are sacredly enjoined to interpret justly as between him and those he leaves behind, should

controversy arise, death having closed his own lips." Schouler on Wills and Administration, page 529, note 1.

[5, 6] The courts will not construe legacies as specific unless they are clearly so intended. *Corbin* v. *Mills,* 19 Gratt. (60 Va.) 438, 468; *Walton* v. *Walton, supra.* In the latter case Chancellor Kent said: "The courts are so desirous of construing the bequest general, that if there be the least opening to imagine that the testator meant to give a sum of money, and referred to a particular fund only as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security." And this rule of construction is to be especially regarded where to hold the legacy specific would result in an inequality among those whom the testator would naturally be expected to treat with equality. These propositions are familiar and well settled. 18 A. & E. Enc. L. (2d ed.), p. 712; 2 Redfield on Wills, sec. 7, p. 146, *et seq.;* 40 Cyc. 1871-2.

In the text last above cited it is said: "Whether a legacy is general, specific or demonstrative, depends entirely on the intention of the testator, and so the expressed purpose of a legacy may indicate its character. In order to ascertain the testator's true intention it is proper when necessary to look to the other parts of the will and consider evidence of the surrounding circumstances. The presumption being that the testator intended equality among the objects of his bounty, a legacy is presumed to be general unless it clearly appears to be specific, especially where it is of a pecuniary character, and the burden of identification of a specific legacy is upon the legatee."

This principle and rule of construction was recognized and applied in *Corbin* v. *Mills, supra,* wherein Judge Joynes used the following language peculiarly applicable here: "The subsequent collection by the testator of a large part of these funds did not have the effect of diminishing the pro-

vision made for Mrs. Robinson and her family, as it would if the bequests were held to be specific. It could hardly have been the intention of the testator that by these subsequent collections the provision thus made for this branch of his family, which seems to have been wholly dependent upon his bounty, should be diminished."

[7] We have here a case in which the testatrix plainly intended to divide her estate in four principal parts of substantially equal amounts for the benefit, respectively, of her three sons and the children of a son who was dead. She made up the $2,000 fund for the grandchildren from two amounts, $1,700 from the Louisville property, and $300 from her general estate, but the subsequent directions as to the time, manner and amounts in which the total sum was to be paid to these children indicate that she had in mind a definite pecuniary provision for them, and this purpose on her part is as plainly indicated as if she had expressed it in so many words. It cannot be doubted that this was her purpose. It will hardly be contended that the legacy could be construed as specific if she had simply added to the second clause some such words as these: "I make this arrangement for the children of my deceased son in order that they may share equally with my living sons in the distribution of my estate." She did not in fact use these words, but she made a will which, when viewed as a whole, disclosed that this was the meaning of the language which she did use.

It is not necessary to hold that if the legacy were clearly specific, the care with which she kept the fund intact until her death would prevent an ademption because of her intention to the contrary. As we have already stated, the question in this form does not arise. But the fact that she did thus care for and preserve this fund is important, and may properly be considered as throwing light upon her meaning in making the provision for the children under the

second clause. Especially is this fact significant in the light of her devotion to and concern for these children. She intended these grandchildren to have $2,000 from her estate, and when she held the proceeds of the Louisville property together, she indicated by her conduct what she meant by the words and figures in the second clause, namely, that she expected that debt, or its proceeds, to furnish a convenient source for the payment of the greater part of the total legacy.

[8, 9] In contracts and conveyances *inter vivos,* it is competent to introduce parol proof to show the practical subsequent construction which the parties themselves have placed upon the written instrument in question. There can be no good reason why the same rule should not apply with reference to the conduct of a testator subsequent to the making of the will. Indeed, it would seem that the rule ought to apply in the latter case with even more propriety and force than in the former. See note to Schouler on Wills, &c., p. 529, *supra.* In *Randolph* v. *Wright,* 81 Va. 612, it is said that, "parol evidence of the circumstances, situation and connection of the testator and his transactions between making the will and his death, are admissible to throw light on his intentions." Applying this rule to the instant case, we entertain no doubt whatever that the testatrix, in the first instance, had in mind a general testamentary scheme under which the children of her deceased son, A. P. Hill, would get $2,000 of her estate. In this view the legacy may very properly be treated as general rather than specific. This was the view of the circuit court, and in that view we concur.

With reference to the assignment of error based upon the introduction of certain evidence, including in particular the interesting statements made by the residuary legatees before this litigation arose, that their mother intended these grandchildren to have the fund in question, we need only

say that we have disregarded that and all other parol evidence, except such as was clearly admissible for the purpose of showing the relationship of the testatrix to the parties, her situation with reference to her own estate, and her conduct in regard thereto between the date of the will and the date of her death.

We find no error in the decree appealed from, and it will be affirmed.

*Affirmed.*