# Richmond

## F. C. JAMES AND IMOGENE JAMES MAYS v. PEOPLES NATIONAL BANK OF LEESBURG, AND OTHERS.

November 24, 1941.

Record No. 2391.

Present, All the Justices.

The opinion states the case.

*Hall & Hall* and *Barbour, Garnett, Pickett & Keith,* for the appellants.

*Edwin E. Garrett,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The Peoples Bank of Leesburg, administrator c.t.a., of the estate of W. C. James, instituted this suit to have the court construe the will of W. C. James, which was executed on January 6, 1926, and probated on May 15, 1929. The pertinent provisions of the will are: "I bequeath unto my beloved wife Emma * * * (certain described property, including $50,000 in cash), to have and to hold for her sole benefit and use during her natural life: At her death the same to be equally divided

between our three children to wit: Arthur A. James, Frederick C. James & Mrs. Imogene M. Mays or to their children, if any, if they be not living.

"After the above bequests are satisfied, I direct that the remainder of my estate, of whatsoever nature, shall be equally divided to my three children above named, or to the children of any who may not be living—they taking the parents share."

The widow, Emma James, and the three named children survived the testator. Two of them, Frederick C. James and Imogene M. Mays, were married before the will was executed but had no children. Arthur A. James was single on the date of the will, married before the death of the testator and died testate prior to his mother, the life tenant, leaving a widow, Edna Carr James, but no children.

It appears from the bill, answers and cross bill that the administrator, under the last paragraph of the will and before the death of the life tenant, distributed approximately $30,000 to the three children, who, in addition, have received large sums from the sale of certain real estate that passed to them by the same paragraph.

The controversy is over that part of the testator's estate which was devised and bequeathed to his widow, Emma James, for life.

Edna Carr James, the widow of Arthur A. James, contends that her husband received a vested remainder under the will of his father, and that, on the death of Emma James, the absolute right to one-third of the property passed to her under the will of Arthur A. James. Frederick C. James and Imogene M. Mays, on the other hand, contend that the remainder, after the life estate of their mother, was contingent upon the three children surviving the life tenant, and that, inasmuch as their brother, Arthur A. James, did not survive the life tenant, the beneficiary in his will has no interest in the property.

The trial court held that the will created a vested remainder and that the widow of Arthur A. James was entitled to one-third of the property devised and bequeathed to Emma James for life. From that decree Frederick C. James and Imogene M. Mays obtained this appeal.

The controlling question to be determined is whether the remainderman should be ascertained at the time of the testator's death or at the time of the life tenant's death.

█ It is evident from reading this will that it was not written by a person skilled in drawing legal papers. The concluding phrase in the first paragraph is awkward and the meaning obscure. Under such circumstances, courts usually "construe expressions implying either *futurity of time* or *contingency* as meaning the former rather than the latter, and as specifying the time at which the *possession* shall accrue rather than the condition upon which the *right shall vest*. Thus, in case of a limitation to A for life, and 'on,' 'at,' 'from,' 'in the event of,' etc., A.'s death to B, the words in quotation marks are construed to refer to the time of *taking possession,* and not to the *vesting of the right,* and hence the remainder is *vested, * * *.*" Minor on Real Prop., 2 ed., vol. 1, sec. 714.

Professor Graves, in Notes on Real Property, page 240, cites the following examples of limitations to surviving children:

"*Hansford* v. *Elliott,* 9 Leigh (36 Va.) 79 (in effect): 'I bequeath certain personalty to my wife for her life; and at her death to be divided among my surviving children.' Held, that *surviving* meant surviving the *testator,* and that all the children living at the testator's death took *vested* interests, which were not affected by their death before the wife, but passed to *their* personal representatives.

"*Martin* v. *Kirby,* 11 Gratt. (52 Va.) 67 (in effect): 'I devise to my wife my land during her widowhood,

and at her death I wish it sold and the proceeds divided among my surviving children.' Held, that children surviving *testator* took *vested* interests at that time.

"*Stone* v. *Lewis,* 84 Va. 474, 5 S. E. 282 (in effect): 'I devise my land to my wife for her life, and after her decease I wish it sold, and the proceeds divided among my surviving brothers and sisters.' Held, the brothers and sisters surviving the *testator* took *vested* interests as of that time."

In *French* v. *Logan's Adm'r,* 108 Va. 67, 69, 60 S. E. 622, Judge Buchanan, speaking for the court, said: "It is a familiar principle, that the law favors the vesting of estates, and where a bequest or devise is made and the property is not to be enjoyed in possession until some future period or event, it will, where no special intent to the contrary is manifested in the will, be held to be vested in interest immediately on the death of the testator, rather than contingent upon the state of things which may happen to exist at the period when the legatees or devisees are entitled to the possession of the property given."

The language of the will to be construed in that case was as follows: " 'I further direct that all property and money given in this will to Bettie H. French, or accruing to her from any of its provisions, shall be vested in William Logan, Jr., as trustee, to be held by him in trust for her benefit, free from the debts or control of her husband, for and during her natural life, at her death to be divided among her issue according to the statute of descents and distribution' of the State of Virginia."

One of the children of Bettie French died during the life of the testator. Another died, unmarried and without issue, after the death of the testator and during the life of Bettie French. In that case, as in the pending case, the children who survived the mother claimed that the will created a contingent remainder. The heirs of the deceased children claimed it created a vested remainder. The court held that the remaindermen were

as easily ascertained at the death of the testator as at the death of the life tenant, stating: "There is not only nothing in the language of the provision in itself which manifests a special intent that the remainder should not vest until the life tenant's death, but when that language is considered in connection with that used in the first part of the same clause of the will, it is reasonably clear that he did not so intend."

In *Neilson* v. *Brett,* 99 Va. 673, 40 S. E. 32, a life estate was created in a daughter, and a gift over was in the following words: "* * *; at the death of my said daughter, Anne, the trust fund shall pass to and be divided among her children and descendants by stocks." It was conceded that this clause created a vested and not a contingent remainder.

In the 5th clause of the same will the life estate was created in these words: "* * *, the share falling to my son * * * shall be held by my executors in trust for the joint use and benefit of my said son and his wife and children, it being my purpose to provide a home for the family during the life of my said son and his wife, and of the survivor of them, and at the death of the last survivor, to divide the trust fund among their descendants by stocks." There was a slight difference in the phraseology of the two paragraphs, but it was held that there was no difference in meaning, and that the words—"at the death of the last survivor, to divide," etc.—were descriptive of the termination of the life estate, referring merely to the period of the determination of the possession or enjoyment of the prior gift and not as a design to postpone the vesting of the estate. See *Lantz* v. *Massie's Ex'r,* 99 Va. 709, 40 S. E. 50.

A number of Virginia cases collected in Michie's Digest, vol. 9, p. 1132, hold that devises and bequests should be construed as vesting at the testator's death unless the intention to postpone the vesting is clearly indicated by the will.

██ Cases construing remainders created by wills are almost as countless as grains of sand on the seashore. We might cite, as counsel on each side have cited, a number of other cases dealing with this question. While rules of construction are well established, the dominating rule is the intention of the testator. This intention, gathered from the whole will, must predominate over all technical words and expressions. When ascertained, the intention, as expressed in the various wills, explains and limits to their proper application the various exceptions and refinements of distinction to be found in the cases.

We turn to the will to ascertain, as clearly as we may, the intention of the testator in this case. In the residuary clause he says: ''I direct that the remainder of my estate * * * shall be equally divided to my three children above named or to the children of any who may not be living—they taking the parents share.''

It is conceded that under this clause the three children who survived the testator were given the absolute right to, and the immediate possession of the property therein mentioned. When the will was written, one of the testator's children had been married for seven years and another for two years, but neither had issue. In this paragraph the testator is dealing with the possibility that one of his children might predecease him. If such child died leaving issue, such issue would take under the will rather than under sec. 5238 of the Code. The testator evidently did not contemplate a contingency in which one of his children might predecease him and leave no children. There are no words or expressions in the entire will which clearly indicate that the testator intended to postpone the vesting of any of his property until the death of the life tenant.

██ Comparing the two paragraphs, it would seem that the testator contemplated making all the provisions of his will effective at the time of his death. If, prior to that time, one of his children died leaving a child,

then that child should take under the will. There are no technical words in the will, nothing to suggest survivorship. There is no condition precedent to the vesting of title in the three children at the death of the testator. The only possibility which the testator seems to have contemplated was that one or more children might not survive him. There is no gift over in the event one of his children should die without issue. A certain part of the estate is given to the wife. All other title or interest that testator had in property is given to his children, naming each child. His intention seemed to have been to vest all title and interest in his property in his wife and children at his death.

Appellants, in effect, contend that the case of *Callis* v. *Ripley*, 161 Va. 472, 171 S. E. 497, modified the rule in Virginia, as stated in the cases heretofore cited. The paragraph of the will to be construed in that case read: "That is to say, I desire to loan to my son, William O. Ripley, the home where I at present reside on trust during his natural life, and should he die leaving no lawful issue of his body, then the said land and improvements shall be equally divided with my next surviving heirs."

It appeared that W. O. Ripley was then living but that he had no issue. This court held that the words "then" and "my next surviving heirs," read in connection with previous provisions of the will, designated the death of the life tenant as the time that the persons who answered the description of the testator's "next surviving heirs" should be ascertained. Judge Chinn, in closing the discussion, said: "In dealing with wills general rules of construction are to be applied with reservations. Indeed, we have said that in varying circumstances different constructions are sometimes placed upon the same word, but so far as we can generalize we do * * *."

As stated, the will under consideration in one paragraph clearly indicates that the testator intended to describe those of his children who were living at his death

as the beneficiaries of his bounty. In the paragraph dealing with the life estate and the remainder, he used similar expressions. In the first case he said, ''divided between our three children (naming them) or to their children, if any, if they be not living;'' and in the latter case he said, ''to my three children above named, or to the children of any who may not be living.'' If, in the one case, the testator intended his property to pass to those who were living at his death, it seemed equally true that he intended the property given to the wife for life to vest in the children who were living at his death, merely postponing possession until the death of the life tenant.

After the trial court had decided the main issue, it referred the cause to a commissioner to ascertain whether the real estate involved was susceptible of partition and to take accounts of the rents and profits accruing since the death of the life tenant. Exceptions were taken to this part of the decree and were made the basis of the sixth and seventh assignments of error. We do not think these exceptions are well founded.

For the reasons stated, the decree of the trial court is

*Affirmed.*