# Richmond

ELIZABETH W. DISNEY, CLARA FOX WILSON, CLARA WILSON ECK AND LITTELL WILSON v. RUTH TANNER WILSON, SOPHIE H. WILSON, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF WINS F. WILSON, DECEASED, J. L. LANDRAM, SUBSTITUTED TRUSTEE, UNDER THE LAST WILL AND TESTAMENT OF NORVEL KNOX WILSON, DECEASED, KURTZ WILSON, DAISY WILSON KEEN, A. HAMILTON WILSON, MARGARET EDELIN WILSON AND FRANCES WILSON DOWDY.

January 16, 1950.

Record No. 3546.

Present, All the Justices.

The opinion states the case.

*Callom B. Jones* and *Morton L. Wallerstein,* for the appellants.

*J. L. Landram, McGuire, Eggleston, Bocock & Woods, William H. King, John W. Pearsall, J. Randolph Tucker* and *Robert G. Cabell,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Norvel Knox Wilson died testate on September 6, 1939. By his last will and testament, dated July 20, 1926, written entirely with his own hand, after directing that all of his just debts be paid, he disposed of his entire estate in the following language:

"I hereby give, devise and bequeath all my estate, real, personal and mixed, of every nature and kind to my brother Wins F. Wilson, Trustee, to be held by him upon the following trust:-

"(1)   To pay all the rents, issues and profits thereof to my dear wife, Ruth Tanner Wilson, for and during her natural life, and,

"(2)   Upon the death of my said wife, or should she not survive me, then to pay said rents, issues and profits to my dear mother, Sarah B. Wilson, for and during her natural life, and

"(3)   Upon the death of both my wife and my mother, or the survivor of them, or should neither of them survive me, then I direct that all of my said estate shall be divided between my brother Wins F. Wilson, and my sister Lily Wilson Hamberlin, and should either my said sister, or my brother not survive me, my wife and my mother, then all of my said estate shall go to such surviving brother (Wins F. Wilson) or sister (Lily Wilson Hamberlin) to be held in fee simple."

The will was duly probated on September 12, 1939, and Wins F. Wilson qualified as the executor of and as trustee of the will. Upon his death in 1945, J. L. Landram qualified as substituted trustee.

The principal question presented to us is the proper construction of the clause above relating to the remainder of the testator's estate. Specifically, we are asked to determine the estate devised and bequeathed to Wins F. Wilson, under the circumstances existing at the death of the testator.

A chronology of the testator's family is necessary for an understanding of the case.

Norvel Knox Wilson, hereinafter referred to as testator, died without issue, survived by his widow, Ruth Tanner Wilson. His mother, Sarah B. Wilson and his sister, Lily Wilson Hamberlin predeceased him, the former having died on March 15, 1928, and the latter on May 7, 1938. He was also survived by two brothers, Kurtz Wilson and Wins F. Wilson, a sister, Daisy Wilson Keen, by A Hamilton Wilson, Margaret Edelin Wilson, the children of Littell Wilson, a deceased brother, by Elizabeth W. Disney, Clara Wilson Eck, and Littell L. Wilson, the children of Ernst V. Wilson, another deceased brother, and by Clara Fox Wilson, the mother of a deceased son of the last named brother.

Wins F. Wilson, the trustee named in the will of the testator, died testate March 6, 1945, leaving surviving his widow, Sophie H. Wilson and a daughter, Frances Wilson Dowdy. Sophie H. Wilson was named as the executrix and sole beneficiary under the will of her husband.

The only beneficiaries under the will of Norvel Knox Wilson living at the time of testator's death were Ruth Tanner Wilson, his widow, and Wins F. Wilson, his brother. Wins F. Wilson subsequently died during the lifetime of the life tenant.

On August 9, 1946, J. L. Landram, as substituted trustee, filed a bill in chancery against each of the above-named in their respective capacities, and the cause was duly matured as to them. The children of Ernst V. Wilson, deceased, and Clara Fox Wilson, the mother and sole heir and distributee of a deceased son of Ernst V. Wilson are the appellants in this proceeding. J. L. Landram, as substituted trustee, and the remaining heirs-at-law of the testator are the appellees.

The bill alleged that testator, at his death, had an estate of the net value of $95,000, including certain real estate therein described; that a portion of the real estate had been conveyed in a deed dated October 11, 1939, by Wins F. Wilson, executor and trustee under the will of testator, and

Wins F. Wilson and his wife to Ruth Tanner Wilson, widow of the testator; that by deed dated August 1, 1941, the same grantors sold and conveyed to C. C. Scroggs another parcel of land from which the estate of the testator received $7,500, its one-half interest therein; that J. L. Landram, substituted trustee, Sophie H. Wilson, executrix of the last will and testament of Wins F. Wilson, deceased, and in her own right, and Ruth Tanner Wilson sold and conveyed to Agnes W. Stone another parcel of land for the sum of $6,000; that at the time the said conveyances were made it was thought that Wins F. Wilson was entitled to the remainder of the estate of Norvel Knox Wilson after the death of the life tenant, Ruth Tanner Wilson; that the substituted trustee had an offer for the purchase of another parcel of land, which he thought a good one, but that a doubt had been expressed as to the interest of the estate of Wins F. Wilson, deceased, in said land and whether a conveyance by the substituted trustee of the estate of Norvel Knox Wilson, deceased, united in by the life tenant, Ruth Tanner Wilson, and Sophie H. Wilson, sole beneficiary under the will of Wins F. Wilson, deceased, would convey a good marketable title to the land; and that the estate of Wins F. Wilson, deceased, being required to file a Federal State tax return, a doubt had been expressed as to whether the interest of the estate of Wins F. Wilson, deceased, in the remainder of the estate of Norvel Knox Wilson, deceased, after the life estate of Ruth Tanner Wilson, should be included in said tax return.

The heirs-at-law of testator and all other interested parties were named as defendants. The complainants prayed, among other things, that the last will and testament of Norvel Knox Wilson, especially the clause relating to the remainder in his estate, be construed and the rights of all parties in interest be ascertained and determined.

Ruth Tanner Wilson, widow of the testator, filed her answer, in which she averred that she was the life tenant under the testator's will. She asked that should it be judicially determined that Norvel Knox Wilson died intestate

with respect to his remainder estate, she, his widow, be allowed dower in all of the real estate of which he died possessed, and declared the sole heir-at-law of all his personalty. She joined in the prayer for the construction of the will.

Sophie H. Wilson, widow of Wins F. Wilson, filed her answer asserting that a vested remainder in fee was devised to her husband by the will of Norvel Knox Wilson, and that as sole beneficiary under the will of her husband, she was entitled to that remainder, subject to the life estate of Ruth Tanner Wilson.

The appellants filed joint and several answers and a cross-bill, in which they contended that there was a net estate of greater value than that set forth in the bill of complaint; that the grantors in the conveyance of the real estate of the testator's estate had no right to make them; and that the interest of Wins F. Wilson was only that of an heir-at-law of the testator. In their cross-bill they admitted that the substituted trustee was required to pay the net income from the trust estate to the testator's widow, the life tenant, Ruth Tanner Wilson. They averred, however, that the life tenant having survived the testator's mother, Sarah B. Wilson, his sister, Lily Wilson Hamberlin, and his brother, Wins F. Wilson, the appellants and the other heirs-at-law of Norvel Knox Wilson were entitled to his estate. They prayed that all sales and conveyances made by Wins F. Wilson, deceased, Sophie H. Wilson, individually and in their fiduciary capacities, and by J. L. Landram, trustee, be annulled, and set aside. They joined in the prayer for a construction of the will of testator, and prayed for an accounting of the estate, and that the heirs-at-law of Norvel Knox Wilson be declared entitled to his estate.

J. L. Landram, substituted trustee, Sophie H. Wilson and Ruth Tanner Wilson filed answers to the cross-bill, denying all material allegations and demanding proof. The remaining heirs-at-law did not appear or plead.

The cause came on to be heard on the pleadings and

certain evidence in the case taken by the defendants with regard to the situation of the testator and his relationship with his relatives, between 1907 and 1926, the date of his will, and to the time of his death in 1939.

Upon consideration of all of which the court held "that upon the death of Norvel Knox Wilson, his mother, Sarah B. Wilson, and sister, Lily Wilson Hamberlin having predeceased him, his will provided for and created a tenancy for life in all his estate in his widow, the respondent, Ruth Tanner Wilson, and an indefeasible vested remainder in fee simple in the whole in his brother, Wins F. Wilson, and that, upon the death of Wins F. Wilson, such remainder passed pursuant to the provisions of the will of the latter to, and is now vested in, the respondent, Sophie H. Wilson," and dismissed the cross-bill of the appellants.

The appellants assert that the provisions of the will were plain and simple; and that no oral evidence is admissible or required to aid in its interpretation. In their briefs, they contend that it created a remainder in fee in Wins F. Wilson and Lily Wilson Hamberlin or their survivor, "should they survive the testator, his wife, and his sister." In oral argument they contend that Wins F. Wilson took a vested remainder, subject to being defeated upon his death in the lifetime of the life tenant, Ruth Tanner Wilson. They argue, therefore, that "the life tenant having outlined the brother and sister, the estate reverted by operation of law to the heirs-at-law of the testator living at the time of testator's death."

Sophie H. Wilson contends that Wins F. Wilson took a vested remainder in fee simple in the entire estate of Norvel Knox Wilson; that the estate was not capable of defeasance, the event upon which a divestment might have occurred having become impossible of accomplishment due to the death of Lily Hamberlin before the testator; and that this absolute estate passed irrevocably under the will of Wins F. Wilson to her.

All of the parties concede that Ruth Tanner Wilson became the life tenant under the will of her husband; but appellants insist that she forfeited her title thereto by claiming an interest in the estate greater than the life estate given her by the will.

The language of the will with respect to the disposition of the remainder is to some extent ambiguous. It was, therefore, helpful and proper to resort to "parol evidence of the circumstances, the situation and connection of the testator, and his transactions between making his will and his death to throw light on his intention." *Randolph* v. *Wright*, 81 Va. 608, 612; *Hill* v. *Hill*, 127 Va. 341, 350, 103 S. E. 605; and *Wallace* v. *Wallace*, 168 Va. 216, 224, 190 S. E. 293.

All of the testimony in this case was given by three witnesses, Ruth Tanner Wilson, to whom testator was married for more than thirty-five years; H. D. Faison, who had known the testator for twenty-five years and had, for sixteen years, managed a business establishment of the testator, and occupied a desk adjoining his during each working day; and J. L. Landram, who was counsel to the testator during his lifetime and saw him almost daily during the twenty years prior to his death. Closely associated with the testator, they possessed intimate knowledge of his situation, conduct and relationship with his family.

The testator was described by the witnesses as having very great affection for his brother, Wins, and sister, Lily. The testator and Wins were said to be "just about as close as it is possible for two people to be." He and Wins had a joint lock box at a bank, in which each kept his personal belongings and securities. He and his sister, Lily, lived in the same house until 1928, and he manifested great interest and affection for her as long as she lived. On the other hand, it appears that he had little regard or affection for his remaining kindred, although he helped them financially when they needed aid. He did not visit them and expressed annoyance over favors they requested of him.

It further appears that after the probate of the will in 1939, none of the heirs-at-law raised any question regarding its interpretation by the life tenant and the trustee until the institution of this suit in 1946. They acquiesced in the practical construction which the life tenant, the trustee and substituted trustee gave to the will,—that is, that it created a life estate in Ruth Tanner Wilson, with an indefeasible remainder in fee simple to Wins F. Wilson and his heirs.

Ruth Tanner Wilson was advised that she had the right to renounce her husband's will. She said she refused to renounce, "Because I understood perfectly the way my husband meant for the money to go and I knew that he only wanted me to have a life interest in it and I didn't feel conscientiously justified in doing anything else." She added she also knew her husband wanted it eventually to "pass to his brother, Wins, and his heirs."

While incidents of practical construction are not controlling in the interpretation of the will, the authorities generally accord to them considerable weight in arriving at the intention of a testator. *Wrights* v. *Oldham*, 8 Leigh (35 Va.) 306; *In re Kelly's Estate*, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268; *Smith* v. *Creech*, 186 N. C. 187, 119 S. E. 3.

See also Annotation 67 A. L. R. page 1272, and 94 A. L. R. page 245.

The appellants, in effect, also argue that the testator died intestate with respect to the remainder attempted to be created in his estate. Here there is a strong presumption that the testator intended to dispose of his entire estate. By a general clause he placed all of it in trust and designated with particularity those who should enjoy its benefits. The presumption against partial intestacy is not rebutted by any facts or circumstances in this case. *McCabe* v. *Cary*, 135 Va. 428, 433, 116 S. E. 485; *Coffman* v. *Coffman*, 131 Va. 456, 466, 109 S. E. 454; *Prison Association* v. *Russell*, 103 Va. 563, 577, 49 S. E. 966.

The next question is whether Wins F. Wilson was given a vested or contingent remainder.

In Blackstone's Commentaries, Volume 2, at page 163, a vested remainder is defined as follows:

"An estate then in *remainder* may be defined to be, an estate limited to take effect and be enjoyed after another estate is determined."

In 4 Kent's Commentaries, 11th Ed., at page 224, the following definition is given:

"A remainder is a remnant of an estate in land, depending upon a particular prior estate, created at the same time, and by the same instrument, and limited to arise immediately on the determination of that estate, and not in abridgement of it."

In *Lantz* v. *Massie*, 99 Va. 709, 711, 40 S. E. 50, Judge Keith, quoting from II Minor's Institutes, page 388, defined a vested remainder as follows:

"A vested remainder is a remainder limited to a certain person and on a certain event, so as to possess a *present capacity to take effect in possession,* should the possession become vacant.   * * *

"The *present capacity* of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent.   Fearne's Remainders 215."

"The existence of the present right, as distinguished from its future enjoyment, is an inherent, essential quality of all vested remainders."   *Allison* v. *Allison*, 101 Va. 537, 569, 44 S. E. 904.

In II Minor's Institutes, 3rd Ed. page 389, Mr. Minor says "A contingent remainder is the remainder limited to an *uncertain person*, or on an *uncertain event*, or so limited to a certain person and on a certain event as *not to possess* the present capacity to take effect in possession should possession become vacant," and that "the grand criterion of a con-

tingent remainder is its *present incapacity to take effect in possession*, should the possession become vacant."

"Courts always favor the vesting of estates, and therefore in doubtful cases lean in favor of construing language as creating vested rather than contingent remainders." *Crews* v. *Hatcher*, 91 Va. 378, at page 381, 21 S. E. 811.

In *Chapman* v. *Chapman*, 90 Va. 409, 411, 18 S. E. 913, it is said:

"There is, indeed, nothing better settled in this court than that all devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will."

See also, *McComb* v. *McComb*, 96 Va. 779, 780, 781, 32 S. E. 453; *Poor* v. *Considine*, 6 Wall. (73 U. S.) 458, 18 L. ed. 869, and the recent cases of *James* v. *People's Nat. Bank*, 178 Va. 398, 402, 17 S. E. (2d) 387; and *Rennolds* v. *Branch*, 182 Va. 678, 29 S. E. (2d) 847, where the rule is reviewed and discussed.

In this case, the language of the will denoting futurity of time refers to the period of possession rather than to the time of vesting. The testator's use of the words "upon" and "then" simply refers to the time when his brother was to come into possession and enjoyment rather than the time of vesting of the right of enjoyment. *James* v. *People's Nat. Bank, supra,* page 401; *Seller* v. *Reed*, 88 Va. 377, 382, 13 S. E. 754.

A will speaks and becomes of effect at the death of the testator, unles a contrary intention shall appear by the will. *Murchison* v. *Wallace*, 156 Va. 728, 742, 159 S. E. 106; Virginia Code, 1942 (Michie), section 5236.

At the time of testator's death only the life tenant, Ruth Tanner Wilson, and the remainderman, Wins F. Wilson were living. Wins F. Wilson was *in esse* and ascertained, and there was nothing to prevent his estate from vesting in possession should the possession, at any time, become vacant by the death of the life tenant. Regardless of its precise character, Wins F. Wilson, by reason of the earlier death of

his sister and the cross-limitation in favor of their survivor, took a remainder in all of testator's estate.

Applying the foregoing principles to the facts, it is apparent that the remainder in Wins F. Wilson never lacked capacity to take effect in possession after the death of the testator, and thus he took a vested remainder by the will.

"An estate once vested will not be devested unless the intent to devest clearly appears." *Poor* v. *Considine, supra.*

If Lily Wilson Hamberlin had survived the testator, she and her brother would each have had a remainder in a one-half undivided interest in the whole estate, subject to defeasance by cross-limitation in favor of the other, as provided in the will; but Lily Wilson Hamberlin having died before the testator, her estate never arose and her brother as the survivor thereby took a remainder in the whole. The condition that Wins F. Wilson survive the life tenant became impossible. There was no provision for a gift over in such an event.

It is an established principle that where the condition upon which an estate can be divested can no longer arise, the estate, being freed of the condition, is rendered absolute.

In *Burdis* v. *Burdis*, 96 Va. 81, 83, 84, 30 S. E. 462, this is said:

"* * * but if the condition is subsequent, and its performance becomes impossible, the rule is different. In that case the estate will not be defeated or forfeited, but the devisee will hold the property by an absolute title, as if no condition had been annexed to the devise. 2 Jarman on Wills 11; 4 Kent's Com. 130; *Ridgway* v. *Woodhouse*, 7 Beav. 437; *Collett* v. *Collett*, 35 Beav. 312; *McLachlan* v. *McLachlan*, 9 Paige (N. Y.) 534; *Martin* v. *Ballou*, 13 Barb. (N. Y.) 119; *Livingston* v. *Gordon*, 84 N. Y. 136, 140; *Merrill* v. *Emery*, 10 Pick. (Mass.) 507; *Parker* v. *Parker*, 123 Mass. 584; and *Morse* v. *Hayden*, 82 Me. 227, 19 A. 443."

Practical applications of the above principle were made in *Brooke* v. *Croxton*, 2 Gratt. (43 Va.) 506, and in *Smith* v. *Smith*, 112 Va. 617, 619, 620, 72 S. E. 119.

458

See also, *Lewis* v. *Henry*, 28 Gratt. (69 Va.) 192, 203.

There is no merit in the contention that the widow forfeited her title by claiming an interest greater than the life estate given to her by the will. This claim is based on the conveyance in 1939 by Wins F. Wilson to the life tenant of his remainder in said lands acquired under testator's will, and on the charge that the life tenant claimed a greater estate than was devised to her. It is unnecessary to review the law sought to be applied because the contention is based on a misconception or misconstruction of the facts.

"Any interest in or claim to real estate may be disposed of by deed or will." Virginia Code, 1942 (Michie), section 5147. Unquestionably, Wins F. Wilson had the right to convey whatever interest or claim he had in the real estate of the testator, whether present or future, vested or contingent, to the life tenant or to any other person. The acceptance of such a conveyance can hardly be construed as a tortious act of the grantee.

As to the second ground of the contention, the pleadings and the evidence show that Ruth Tanner Wilson never claimed any interest in her husband's estate other than the life estate given to her by the will. Both in the lower court and in this court, it was emphasized that she claimed only such interest in the estate of her husband as he saw fit to bestow upon her, namely a life estate.

Upon the whole case, we are of opinion that the decree of the trial court was plainly right and in conformance with the manifest intention of the testator. There being no error in the decree appealed from, it is affirmed.

*Affirmed.*