## CIRCUIT COURT OF SCOTT COUNTY

Glen Falin et al.

v.

Albert Mack Shelton,
Co-executor of the Will of
Samuel Scott Falin, etc.

November 19, 1979

Case No. (Chancery) 955

BY JUDGE S. W. COLEMAN, III

The court will first consider the issue arising from paragraph Ninth of the Samuel Scott Falin will relating to whether an ademption occurs to a legacy providing for payment of the monthly rental from specific properties when that property is transferred after the death of the testator by the exercise of purchase options contained in leases executed by the testator during his lifetime, all prior to the date of execution of the will. The present issue which this court is called upon to decide before consideration of the foregoing dispositive issue is whether parol evidence is admissible to ascertain the intent of the testator in determining the type of legacy since classification will have a bearing upon whether an ademption occurs. The complainants contend that the defendant, Hannah Thompson, should not be permitted to introduce parol evidence to prove the intent of the testator because, they contend in Virginia, an ademption would occur in the instant situation as a matter of law and intent has no bearing upon whether there is an ademption. Relying primarily upon *King v. Sheffey*, 35 Va. (8 Leigh) 614 (1837), and *May v. Sherrard*, 115 Va. 617 (1913), the complainants assert that the gift to Hannah Thompson in paragraph Ninth is a specific legacy i.e., a life estate in specific property, and upon exercise of the purchase options, an ademption occurs because the fund no longer exists. The defendant, Hannah Thompson, contends that the gift is a demonstrative

legacy, that it is not a life estate, and merely provides that the rental income from certain properties was bequeathed to her. Hannah Thompson contends that the testamentary scheme of the will reflects an intention of the testator to make a demonstrative legacy in that his purpose was to provide for the legatee to receive income and was merely providing for the fund or source from which to be derived; additionally, the defendant, Hannah Thompson, contends that no ademption would occur because there has been no failure of the fund at the death of the testator but a change in the nature of the fund subsequent to the death of the testator. The defendant relies heavily upon *Hill v. Hill*, 127 Va. 341, 103 S.E. 605 (1920), and *Home Mission Bd. v. Kirkpatrick*, 181 Va. 395, 25 S.E.2d 281 (1943), in arguing that intent of the testator should be considered in determining the type of legacy and whether an ademption occurs. *See, Corbin v. Mills*, 60 Va. (19 Gratt.) 438, 468 (1869).

Without deciding whether the bequest is specific or demonstrative, presently the court must determine whether intent of the testator may be considered in determining the nature of the legacy. If so, the court must next determine whether that intent is to be derived exclusively from the language of the will or whether extrinsic factors and parol evidence may be considered.

> A demonstrative legacy partakes of the nature of both a general and specific legacy, being a gift of money payable out of a particular fund in such a way as to evince the testator's intention not to relieve his general estate from payment of the legacy in case the particular fund fails . . . the distinction between such legacies and specific gifts being that in the former, the primary intention is that the legacy be paid in any event, even though the designated source fails, while in the latter, the main intention is that the legacy be paid by the delivery of the identical thing, and that thing only, and in the event that at the time of the testator's death, such thing is no longer in existence, the legacy will not be paid out of general assets . . . .
>
> [S]ome of the earlier cases at 6 A.L.R. 1358, that the testator's intention was immaterial in determining whether or not a legacy was demonstrative, the decision being governed exclusively by the language actually used, it is now well

settled that the courts will seek to give effect to the testator's intent in this as in other areas . . . .

Noting that some earlier decisions took the position that the intention of the testator was immaterial in ascertaining the classification of a legacy and that by using certain words in connection with existing circumstances, it was possible to characterize a legacy, the court in *Re Dungan's Estate* (1950), 31 Del. Ch. 551, 73 A.2d 776, said the current authorities were in general agreement that in order to ascertain the nature of a legacy, it was necessary to ascertain and give effect to the testator's intention and that in determining that intention, it was not sufficient to consider merely the language in which the legacy was set forth but the entire will as well as the circumstances to which the testator was subjected at the time of its execution must be looked to.

Although recognizing the well-settled rules that the courts are inclined against holding legacies to be specific and that a legacy of a certain amount, payable out of the specific fund, will ordinarily be taken as demonstrative, the court in *Waters v. Selleck* (1930), 201 Ind. 593, 170 N.E. 20, said the characterization of a legacy was not governed by any arbitrary rules but depended entirely upon the testator's intention, and the rules of construction in question would not control where that intention was otherwise. 64 A.L.R. 2d, *Anno: Legacy as Demonstrative*, p. 785–87.

Thus, the court is of the opinion that extrinsic evidence and parol evidence is admissible to ascertain the intent of the testator as to the type of legacy subject to those rules of admissibility on the issue of intent. Accordingly, the defendant may proceed with the introduction of relevant and probative evidence to show testator's intent as to paragraph Nine of the will.

Paragraph Eighth provides: "I give and bequeath the sum of Two Thousand ($2,000) to the following people: To the children of Ida Stair, namely; Carl Stair, Opal Lane, Gertrude Lindsey, Loretta Stair and Don Stair, the son of Opal Stair Lane; to the children of my brother, Wilbur Falin, namely; Oscar Falin, Lillian Stewart, Margaret Benton, Roy Samuel Falin, Ella Mae Lowe, Wilbur Falin, Jr., Tom Falin, and Juanita Falin, the widow of Gene Falin; to the children of my brother, Jeff Falin, namely; Ralph Falin, Virginia Felker, Georgia

Lowe, Ruby Falin Bright, Claude Falin, Glenn Falin, Bobby Falin, June Speaks, and to Jeff Falin's widow, Ida Falin, and her daughter, Margaret Falin Kenny." The issue for the court is whether (1) the sum of $2,000 is to be divided among all twenty-three individuals named, or (2) the sum of $2,000 is to go to each of the three separate classes of individuals named to be divided among each class, or (3) the sum of $2,000 is to go to each of the individuals named. The intent of the testator does not appear that unclear in view of the entire testamentary scheme. The language does not express an intent to divide $2,000 "among" twenty-three people, nor does it appear consistent with the testator's scheme to make specific bequests to each in the amount of $86.95. Also, it does not appear that the testator intended to make $2,000 gifts to each of the separate classes because the members of the class are not equal and the amount received by each would vary, and the size or amount of the gift would be smaller than what appears to be his intent toward these individuals who were obviously objects of testator's affection from other provisions in the will. Also, considering the amount of the bequests in paragraphs Sixth and Seventh in relation to that in Eighth, and particularly considering the provision in Paragraph Fifth that his farm property be sold to satisfy the specific legacies, the court is of the opinion that the clear intent of the testator was to bequeath $2,000 to each individual named.

All evidence which has been introduced at this time indicates there is no individual known as Bobby Falin who is the son of testator's brother, Jeff Falin, mentioned in paragraph Eighth, nor has any evidence been introduced in an effort to clarify any ambiguity or mistake as to the name or shown that any other individual may have been intended as the object of this legacy. Accordingly, if a legatee is nonexistent, the legacy will fail and the fund in this instance would appear to be subject to distribution with the residuary estate.

The defendant, Hannah Thompson, contends that paragraph Fourth of the will disposed of all the personal property, both tangible and intangible, without limitation to her. Relying upon the presumption against intestacy, Hannah Thompson asserts that at the very least, the bequest should include all tangible personal property, including farm implements, hay, etc. The complainants contend that the rule of construction *ejusdem generis* would apply and that "personal and household effects of every kind, including, without limitation" should only include tangible personal property of a nature similar to that itemized

which is of a "personal" nature or would be household effects. Paragraph Fourth provides: "I give and bequeath all my personal and household effects of every kind, including, without limitation, furniture, pictures, books, jewelry, wearing apparel and automobiles to my devoted friend, Hannah Thompson, residing at 1014 Elizabeth Street, in Kingsport, Tennessee." The presumption against intestacy is not so broad as to embrace property which is clearly not within the scope of the bequest. Nothing within the language of the bequest remotely suggests that intangible personal property should be included or that tangible personal property other than "personal and household effects" go to the legatee. "Personal effects" has been held to only include property or items which have a more or less intimate relation to the person. *Bennett v. Bradley*, 149 Va. 746, 141 S.E. 756 (1978). "Household goods and furniture" have been held to include "everything about the house that had been usually held and enjoyed therewith, and that would tend to the comfort and accommodation of the householder . . . ." Michie's J., *Wills*, § 103. *See, Carnagy v. Woodcock*, 16 Va. (2 Munf.) 234 (1811). Accordingly, only those items embraced within these definitions would pass to the legatee, and all other personal property, both tangible and intangible, would be governed by other provisions of the will or would pass by the laws of intestacy.