# Richmond.

## SALLIE WORNOM v. HAMPTON NORMAL AND AGRICULTURAL INSTITUTE.

### March 19, 1926.

1. WILLS—*Construction—Reference by Court of its Own Motion after the Case had been Heard.*—In the instant case, a suit for the construction of a will, after the case had been heard, the court of its own motion referred it to a commissioner to take evidence showing the real estate of which testator was seized and possessed at the time his will was executed. This action of the court was assigned as error. Section 6228 of the Code of 1919 appears to contemplate that at any time before final decree further evidence may be offered. Of course, cases occur in which the court may properly exercise its discretion to refuse to reopen it for further evidence after it has been fairly and finally submitted. That question is not involved here, but merely whether a judge, for the satisfaction of his own conscience, may require parol evidence to be submitted to aid him in the construction of a will.

   *Held:* That, while the necessity for this additional testimony was not apparent, its introduction certainly presented no ground for reversal.

2. WILLS—*Construction—Reference by Court of its own Motion after the Case had been Heard.*—In the instant case, a suit for the construction of a will, after the case had been heard, the court of its own motion referred it to a commissioner to take evidence showing the real estate of which testator was seized and possessed at the time his will was executed. It was assigned as error that the court refused to allow the complainant, at the same time, to introduce evidence showing the value of the personal estate of the testator. Inasmuch as the judge determined to permit an inquiry as to the realty then owned by the testator, it may have been appropriate to make the additional inquiry as to the personalty, but both inquiries were inconsequential, and therefore the action of the court furnished no ground for reversal.

3. WILLS—*Construction—Read as a Whole.*—A will must be read as a whole, and all of its clauses reconciled, if it is fairly possible to do so, in view of the language used.

4. WILLS—*Absolute Estate Given to Wife—Bequest Over.*—By a clause in his will a testator gave all his property to his wife in fee simple to use and dispose of as she might desire, upon condition, however,

that should she not so dispose of the same before her death, then over to his daughter.

*Held:* That the gift over to his daughter of the property which he had already by the same clause devised in fee simple to his wife was invalid.

5. Wills—*Absolute Estate Given to Wife—Bequest Over.*—By a clause in his will a testator gave all his property to his wife in fee simple to use and dispose of as she might desire. By a later clause testator gave to his niece a house and lot. Reading the will as a whole it appeared that testator had no idea of revoking the previous gift to his wife in favor of the niece, but that he attempted to give the property described to his niece only in the event that his wife failed to dispose of it.

*Held:* That, as the wife took a fee simple, the inconsistent gift over was void. The fact that the gift over appeared in a later clause had no special significance.

6. Wills—*Construction—Intention of Testator.*—All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

7. Wills—*Construction of Will—Intention of Testator.*—Thus, the rule that where there is an inconsistency between a general and a specific provision, the specific must prevail, no matter in what order they come; and the rule that when two clauses of a will are repugnant the latter ought to prevail must yield to the intention of the testator when such intention is manifest.

8. Wills—*Devise of Testator's Property to his Wife—Gift Over if She Does not Dispose of the Same.*—Where unquestionably the paramount intent of a testator, which was sufficiently expressed in his will, was to vest his widow with dominion over everything which he possessed, and to give all of his property to her absolutely and in fee simple, other bequests and devises in the will·must yield to this intent. It is not sufficient to create a doubt from other terms in another part of the instrument. The terms to rescind or cut down the estate or interest given to the widow must be as clear and decisive as the terms by which it was created. If the benefit is to be taken away, it must be by express words or necessary implication.

Appeal from a decree of the Circuit Court of Elizabeth City county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. Winston Read* and *A. W. E. Bassette, Jr.*, for the appellant.

*John Weymouth* and *F. S. Collier*, for the appellee.

Prentis, P., delivered the opinion of the court.

This suit involves the construction of the will of Simon Bryant, who died August 16, 1912, and whose will was probated August 26, 1912. The clauses of the will to be construed are these:

"Third. I give and bequeath to my beloved wife, Catharine Bryant, in token of my love for and absolute confidence in her, absolutely and in fee simple, all property real, personal or mixed of which I may die seized of and possessed, or to which I may be entitled at the time of my death, to use and dispose of as she may desire, upon condition, however, that should she not so dispose of the same before her death, then I give to Mary L. Bryant, my daughter, all of the personal property so remaining undisposed of at the time of the death of my said wife, Catharine Bryant, absolutely to dispose of or to use as she may desire; I also give to my said daughter, Mary L. Bryant, in fee simple my lot on West Queen street in the town of Hampton, which said lot is bounded on the south fifty-three feet by Queen street and extends back to Grant street together with all improvements, appurtenances and privileges thereunto belonging;

"Fourth. I give and bequeath to my niece, Sallie Wornom, whose maiden name was Sallie Hillman, wife of Tom Wornom, sometimes called Tom Vernon, in fee simple, to use and dispose of as she may think

proper, my house and lot on the road leading from Gatewood's Corner to Zion Church, near where the railroad crosses said road, which said lot formerly was a part of the Normal School farm, also five lots purchased by me from Ransone Brothers, near the Spiller Academy, which are a part of what was originally a part of the John L. Peek farm;

"Fifth. I give and bequeath to Catharine Mayo, in fee simple to use and dispose of as she may desire, my house and lot on Thornett lane, in Wythe district, Elizabeth City county, Virginia;

"Sixth. I give and bequeath to Lottie Mayo, in fee simple to use and dispose of as she may think proper, the eastern half of my lot of land, containing about one half acre, located near the old Wythe district voting precinct, on the north side of West Queen street, extended, and to Lucy Mayo the western half of the said lot, in fee simple, to use and dispose of as she may think proper.

"I nominate and appoint my beloved wife, Catharine Bryant, executrix of this my last will, and request that she be permitted to qualify as such without security other than her personal bond, and without the appointment of appraisers."

After Simon Bryant died, his widow, Catharine R. Bryant, claiming under the third clause of the will, on March 16, 1918, sold and conveyed certain real estate described as the "house and lot on the road leading from Gatewood's corner to Zion church," to the Hampton Normal and Agricultural Institute. She, Catharine Bryant, made her will June 27, 1922, which was probated December 23, 1922, whereby she gave all of her property, real and personal, to Florence Ella Lane. After the death of Catharine Bryant, in March, 1923, this suit was instituted by Sallie Wornom, claiming

that she is the fee simple owner of the lot which had been so conveyed by Catharine Bryant to the Hampton Institute, and that she acquired it under clause 4 of Simon Bryant's will.

A single issue is raised by the pleadings and that is whether, under the will of Simon Bryant, his widow, Catherine, took a fee simple in the real estate so conveyed to the institute by her, or whether the clauses of the will are so inconsistent that she took no interest in that lot because the fourth clause is repugnant to the third clause, and the appellant here, Sallie Wornom, took thereunder a fee simple therein.

[1] 1. The first assignment of error is that after the case had been heard, the court, of its own motion, referred it to a commissioner to take evidence showing the real estate of which Simon Bryant was seized and possessed at the time his will was executed. This assignment is based upon the statute, Code, section 6228, which, among other things, provides that "in a suit in equity a deposition may be read, if returned before the hearing of the cause, or, though after an interlocutory decree, if it be as to a matter not thereby adjudged, and be returned before a final decree."

In support of this assignment, *Richardson* v. *Duble,* 33 Gratt. (74 Va.) 730, and *Radford* v. *Fowlkes*, 85 Va. 820, 8 S. E. 817, are cited.

We find nothing in either of these cases, or anywhere else, to support this assignment. The statute itself appears to contemplate that at any time before final decree further evidence may be offered. Of course, cases occur in which the court may properly exercise its discretion to refuse to reopen it for further evidence after it has been fairly and finally submitted. That question is not involved here, but merely whether a judge, for the satisfaction of his own conscience, may

require parol evidence to be submitted to aid him in the construction of a will.

Such points appear to be based upon what Mr. Wigmore calls the "sporting theory," indicated in this language from 2 Wigmore on Evidence (2d ed.), sec. 784, where he says this: "The sporting theory of the common law in which litigation was a game of skill, to be conducted according to specific rules, and to be decided by the combined effects of skill, strength and luck, tended to place the judge primarily in the position of an umpire of a game, whose duty it was to interfere only so far as needed to decide whether the rules of the game had been violated. This tendency never dominated (so far as the judge's functions were concerned) in the orthodox English practice. The judge there has never ceased to perform an active and virile part as a director of the proceedings and as an administrator of justice. Nevertheless, in the United States the degenerate tendency has steadily been towards the domination of the function of umpire presiding over contestants in a game. Not only has public opinion pressed toward this end; but the judiciary as a whole has not often resisted, but rather abdicated. Several reasons not necessary to analyze here have contributed to this—chief among the illustrations of the tendency is, perhaps, the ill-advised, yet almost universal legislative prohibition against comments by the judge upon the evidence in his charge to the jury.

"One of the natural parts of the judicial function in its orthodox and sound recognition is the judge's power and duty to put to the witness such additional questions as seem to him desirable to elicit the truth more fully. This just exercise of his function was never doubted at common law; the judge could even call new witnesses of his own motion, and could seek evidence

to inform himself judicially; much more, could he ask additional questions of a witness already called, but improperly examined."

He was there referring to the modern (and in my opinion unwise) restrictions imposed upon trial judges in common law cases. He says this in referring to cases like this, in which the issues of fact are to be determined by a trial judge without the aid of a jury, (5 Wigmore on Ev. (2d ed.), sec. 2569): "There are, however, facts of 'law' which are for the judge's own ultimate determination—such as the tenor of foreign or local laws and the meaning of a document. Since these are to be decided by the judge, he is at liberty to investigate the facts for himself, in addition to receiving the evidence which the parties may offer."

While we do not appreciate the necessity for this additional testimony, its introduction certainly presents no ground for reversal.

[2] 2. The second assignment of error is that the court refused to allow the complainant, at the same time, to introduce evidence showing the value of the personal estate of the testator, Simon Bryant. Inasmuch as the judge determined to permit an inquiry as to the realty then owned by the testator, it may have been appropriate to make the additional inquiry as to the personalty, but in our view of the case both inquiries were inconsequential in this case, and therefore this action of the court furnishes no ground for reversal.

3. The third error assigned reaches the material point in this case—that is, the decree which denied the relief prayed for by the complainant and dismissed the bill. The question then is, whether or not, under the third clause of the will of Simon Bryant, Catherine Bryant took a fee simple in the property which she conveyed to the institute, or whether, on the contrary, she took

nothing and Sallie Wornom, the appellant, took a fee simple therein under the fourth clause of the will.

If there were no fourth clause, it is perfectly apparent, under the language of the third clause, that Catharine Bryant took a fee simple in the property thereby devised, for, to use the words of the will, it is all given to her "absolutely and in fee simple."

[3, 4] The will must be read as a whole, and all of its clauses reconciled, if it is fairly possible to do so, in view of the language used. Reading them thus together, we find in the third clause the indication that there was in the testator's mind the thought that although he had made an absolute gift of all of his property, real and personal, to his wife, she might not use or dispose of it all before her death. With this idea in mind, he, in the same clause, then undertook to give one of his lots, that on west Queen street, in Hampton, to his daughter, Mary L. Bryant. It needs no citation of authorities to support the view that this gift over to his daughter of the property which he had already by the same clause devised in fee simple to his wife, is invalid under the *May* v. *Joynes* (20 Gratt. [61 Va.], 692) case and the unbroken line of other cases which enforce the rule there stated.

[5] We think there can be no doubt whatever that this rule should also be applied in construing this fourth clause of the will, under which the appellant, Wornom, here claims, and that the testator had no idea of thereby revoking the previous gift to his wife in favor of the appellant, but that he attempted to give the property described to Sallie Wornom only in the event that his wife failed to dispose of it. This we feel sure is the true construction to be here applied. We, therefore, conclude that as Catherine Bryant took a fee simple, the

inconsistent gift over is void, because the testator undertook to do that which is legally impossible. The fact that the gift over appears in the fourth clause has no special significance, and is invalid because it is subject to the fee simple and absolute power of disposition so clearly vested in Catherine Bryant by the third clause of the will.

It has been said in *Penick* v. *Walker*, 125 Va. 274, 277, 99 S. E. 559: "As in the majority of such cases, however, rules of construction and judicial precedents are not very helpful. 'After all, but little aid can be derived in the construction of wills from adjudged cases, as each case must be governed by its own particular facts and circumstances.'" *Cole* v. *Cole*, 79 Va. 255.

[6, 7] The appellant does not deny the established rule upon which this conclusion is based, but rests her contention upon other rules which may be thus expressed: (a) That where there is an inconsistency between a general and a specific provision, the specific must prevail, no matter in what order they may come; and (b) that when two clauses of a will are repugnant the latter ought to prevail. All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial. *Marcy* v. *Graham*, 142 Va. 285, 128 S. E. 550.

We do not think it necessary to review the cases. Among recent expressions of this court on this subject

are, *Davis* v. *Kendall*, 130 Va. 175, 107 S. E. 751; *Coff-man's Admr.* v. *Coffman*, 131 Va. 456, 109 S. E. 454; *Blankenbaker* v. *Early*, 132 Va. 408, 112 S. E. 599; *Swan* v. *Swan's Ex'or*, 136 Va. 496, 117 S. E. 858; *Smith* v. *Smith*, 137 Va. 408, 119 S. E. 138.

In *Jesson* v. *Wright*, 2 Bligh's Rep. (N. S.) 57, this is stated: "It is definitely settled as a rule of law that where there is a particular and a general or paramount intent, the latter shall prevail, and the courts are bound to give effect to the paramount intent."

[8] In *Thornhill* v. *Hall*, 8 Bligh's Rep. (N. S.) 107, we find this from the Lord Chancellor: "It is a settled rule, in the construction of instruments, that if an estate is conveyed, and interest given, a benefit bestowed, in one part, by clear, unambiguous, explicit words, upon which no doubt could be raised; to destroy or annul that estate, interest, or benefit, it is not sufficient to raise a mist and create a doubt, from other terms in another part of the instrument. Possibilities and even probabilities will not avail. The terms to rescind or cut down the estate or interest before given, must be as clear and decisive as the terms by which it was created. If the benefit is to be taken away, it must be by express words or by necessary implication." This is denominated the settled rule and is expressly approved in *Barksdale* v. *White*, 28 Gratt. (69 Va.) 227, 26 Am. Rep. 344.

In *Price* v. *Cole*, 83 Va. 343, 2 S. E. 200, it is held that the general intention of the testator, gathered from the whole will, must prevail over the rule that of two repugnant clauses the latter must prevail.

Authorities could be multiplied, but these are sufficient. We are perfectly clear in our view, as apparently the learned chancellor in the lower court was,

that unquestionably the paramount intent of the testator, Simon Bryant, which is sufficiently expressed in his will, was to vest his widow, Catherine, with dominion over everything which he possessed, and to give all of his property to her absolutely and in fee simple. This being our view the decree of the trial court will be affirmed.

*Affirmed.*