328 S.E.2d 184

**Helen KILLEEN, et al.**

v.

**Sam CHICO, Jr.**

**No. 16127.**

Supreme Court of Appeals of West Virginia.

March 22, 1985.

Linda Kay Wichman, Little Lick Farm Legal Office, Barboursville, for appellants.

George R. Farmer, Jr. and Mark A. Ferguson, Jackson, Kelly, Holt & O'Farrell, Morgantown, for appellee.

NEELY, Chief Justice:

During his lifetime, Sam Chico built the Chico Dairy Company in Morgantown into a successful and profitable enterprise. Generations of students at West Virginia University have passed leisurely hours in the Dairy's ice cream parlor near the old campus, and the record reveals that in the last several years Chico Dairy has diversified into a chain of convenience stores. In 1956 Sam Chico died testate and left all of the stock of the Chico Dairy Company to his son, Sam A. Chico, Jr., who was to act as trustee under the terms of what is, admittedly, a very strange trust.

Under old Sam's will, young Sam was to take possession of all the stock of the Chico Dairy Company and to hold it for the following beneficiaries in the following proportions: Sam A. Chico, Jr.—51 percent, Julia D. Chico—29 percent, Joseph E. Chico —10 percent, and Charles David Chico—10 percent. The 10 percent interest left to Joe and Charles, however, was to be held for them only so long as they remained active in the business of the Chico Dairy Company. Under the will's terms if either Joe or Charles terminated his association with the Chico Dairy Company during the life of the trust, his interest was to be added to that of Julia D. Chico. Joe did terminate his association with the dairy company and, in fact, died. Therefore, Julia D. Chico now has a participating interest in 39 percent of the trust.

The trust provides that when Julia dies, the trust is to terminate and the stock of the company is to be distributed by the trustee as follows: 51 percent to young Sam, 10 percent to Joe (in the event that he is still active in the business), 10 percent to Charles (in the event that he is still active

in the business) and 29 percent to the eight other children of Sam and Julia Chico, to wit, Leo J. Chico, Helen Killeen, Catherine Sellaro, Laura Crow, Florence Cann, Mary Angelo Chico, Teresa Christine Chico and Julia Ann Chico, share and share alike. The will states that if either Joe or Charles terminates his active association with the company during the continuance of, or after the termination of the trust, then his 10% share was to be added to the 29 percent to be distributed among the eight children just named. Consequently, the eight children (or their estates) who were to share in Julia's 29 percent of the trust would never receive less than 3¼ percent but could receive more.

The trust created under old Sam's will is obviously designed to keep the Chico Dairy Company intact and operating as a family business; to this end young Sam was accorded all of the powers of the traditional *paterfamilias.* He was given full power to manage the business during the life of the trust and was accorded a first and exclusive option to purchase all or any part of the 29 percent of the stock at the time of its distribution to the other children for an amount equal to its book or fair market value, whichever was higher. Furthermore, in the event of argument over the value of the stock, the price was to be determined by arbitration.

The appellants, who were plaintiffs below, are two of the eight children who will receive at least 3¼ percent of the Chico Dairy stock upon the death of their mother, Julia. In the circuit court they alleged that young Sam is breaching his fiduciary duty in a number of ways. Unfortunately, the plaintiffs' pleadings and discovery efforts were not exactly paradigms of legal craftsmanship and the circuit court awarded summary judgment to the defendant trustee, young Sam.

In a nut shell, it is probably fair to say that the plaintiffs' primary complaint about young Sam's stewardship is that he is high-handed and cavalier in the management of the business, and is neither forthcoming nor cooperative in sharing information about its management and operation with the trust's remaindermen. Plaintiffs alleged in their complaint that: (1) Sam used the trust estate for his own private benefit; (2) Sam made no accounting of the trust estate; (3) Sam attempted to purchase the interest of the beneficiaries of the estate for the corporation with the assets of the corporation and thereby wasted the assets of the trust estate; and (4) Sam is currently wasting the assets of the trust estate.

The circuit court found that the plaintiffs did not have a right to demand an accounting because they were contingent remaindermen and were not income beneficiaries of the trust. Furthermore, the court held that the plaintiffs failed to establish by affidavit or otherwise that the defendant was guilty of committing waste in administering the trust res. In this latter regard, the defendant presented an accountant's affidavit that the value of the trust res was at least $150,000, the value at the time of old Sam's death.

 Certainly we agree with the circuit court that there was no incisive use of discovery to develop evidence of waste or breach of fiduciary duty. But the appellants alleged waste and an affidavit showing simply that a business is worth as much today as it was in 1956, notwithstanding yearly rates of inflation since 1956 of between 2 and 9 percent a year, does not conclusively show lack of waste or the reasonably prudent management required of a fiduciary. The trustee under old Sam's will did not have the power to waste the assets; therefore, the plaintiffs were entitled to develop their theory of waste at a hearing because the affidavit on which the trial court relied does not, as a matter of law, conclusively remove the matter from the realm of disputed facts.

 More to the point, however, we find that the circuit court was in error in its holding that the plaintiffs are *contingent* remaindermen and not vested remaindermen. Julia, the life income beneficiary, has no power to terminate the trust, no power to alienate the ownership of the stock being held for her by the trustee during her life, and has no power of appointment. Consequently, there is nothing

contingent about the plaintiffs' interest in the stock of the corporation; contrary to the circuit court's holding, the plaintiffs are vested remaindermen who have actual estates *in praesenti* to be enjoyed *in futuro.* "A devise to A for life and at A's death, then to B creates a remainder in B which vests immediately upon testator's death." Syllabus point 4, *In re: Conley,* 122 W.Va. 559, 12 S.E.2d 49 (1940).[1] Therefore, if plaintiffs can show that young Sam is dissipating the company's assets through negligent management, they are entitled to either legal or equitable relief. The fact that old Sam's will relieved the trustee from making a formal accounting is not a license to manage the assets negligently, self-deal, or waste the estate.

Because there are still disputed issues of fact, and because the circuit court's order sustaining defendant's motion for summary judgment is grounded, in part, on the court's conclusion that the plaintiffs are contingent and not vested remaindermen, the summary judgment must be reversed and the case remanded for further proceedings.

Reversed and remanded.

1. In Syllabus Point 8, of *Smith v. Smith,* 134 W.Va. 842, 62 S.E.2d 347 (1950) this Court held:

The uncertainty of ever taking effect in possession does not make a remainder, having all the necessary prerequisites of a vested remainder, a contingent remainder by reason of such uncertainty. The present capacity of taking effect in possession, if and when the possession becomes vacant, distinguishes a vested remainder from a contingent remainder.

We also note that "where the provisions of the will render doubtful whether testator intended the estate to be vested or contingent, the doubt will be resolved in favor of the vesting of the estate." See Syl.Pt. 2, *Tharp v. Tharp,* 131 W.Va. 529, 48 S.E.2d 793 (1948).