ROY PICOT, JR., ET AL.

V.

WILLIAM THOMAS PICOT, INDIVIDUALLY, ETC., ET AL.

Record No. 870887

April 21, 1989

Present: Carrico, C.J., Compton, Russell, Thomas, Whiting, and Lacy, JJ.,
and Poff, Senior Justice

*Herman T. Benn (James A. Overton; Benn & Benn*, on briefs), for appellants.

*Theodore J. Burr, Jr. (John A. Dezio; Outten, Barrett & Burr*, on brief), for appellee.

POFF, Senior Justice, delivered the opinion of the Court.

We granted this appeal to review the chancellor's construction of a will. The facts and circumstances are not in dispute.

Roy Picot died intestate on September 14, 1982. His estate consisted of a farm and certain other assets irrelevant to this appeal. His wife, Maggie Eure Picot, and their four children survived him. Maggie died testate on May 27, 1985, survived by all four children. Her will, executed October 20, 1983, provided in pertinent part as follows:

> SECOND: I give and devise all of my real estate, it being my undivided dower interest in the Roy Picot farm, to my son, William Thomas Picot, in fee simple and absolutely, per stirpes. It is my hope and desire that my home shall continue to be a home for all four of my children, and their

decendents [sic], and I hope that they all continue to utilize the same and enjoy the same together.

THIRD: All the rest and residue of my estate of every kind and description, I give, devise and bequeath to my four children, William Thomas Picot, Lessie Picot Boone, Cora Picot Rawls and Roy Picot, Jr., in fee simple and absolutely and in equal shares, share and share alike, per stirpes.

Roy Picot, Jr., and his two sisters, Lessie and Cora, (the petitioners), filed a petition for construction of their mother's will. William, their brother and the executor named in the will, filed two answers, one joining in the prayer for construction and the other alleging that the testatrix "clearly intended that all of her real estate be devised to her son, William Thomas Picot". In a final decree incorporating a letter opinion, the chancellor expressly upheld William's allegation, and we granted the petitioners an appeal.

The petitioners take the position that the chancellor erred in not declaring that the second paragraph of Maggie's will vested fee simple title to one third of the farm in William; that the remaining two thirds became part of the residuary estate devised by the third paragraph in equal shares to the four children; and, hence, that William became the fee simple owner of one half, and each of the three petitioners one sixth, of the farm. We disagree.

Because the parties introduced no extrinsic evidence of testamentary intent, we confine our inquiry to the language on the face of the will in light of the agreed chronology of events and relevant changes in the statutory law. In the second paragraph, Maggie described "all of [her] real estate" parenthetically as an "undivided dower interest". That was a misdescription. In 1983 when her will was executed, "all of [Maggie's] real estate", under Code § 64.1-1 as amended in 1982, included the entire farm inherited in fee simple from her husband.[1] This full fee simple title

---

[1] By Acts 1982, c.304, the General Assembly amended Code §§ 64.1-1, 64.1-11, to place a spouse who survives an intestate spouse first in the line of descent and distribution (unless the intestate was survived by children or their descendants who were not children or descendants of the surviving spouse). This change was effective July 1, 1982. Maggie's husband died intestate on September 14, 1982. Maggie executed her will on October 20, 1983.

subsumed Maggie's dower interest which, at that time, was defined as an "interest in fee simple of one third of all the real estate whereof the deceased spouse or any other to his use was at any time seized during coverture of an estate of inheritance". Acts 1977, c. 657; Code § 64.1-19.

In support of their construction of the language describing the subject of the specific devise to William, the petitioners argue that the clause, "all of my real estate", and the parenthetical clause, "undivided dower interest", are mutually repugnant and that the latter prevails. In the alternative, they contend that the chancellor should have reconciled the two clauses and given effect to both by ruling that "the second clause . . . be considered a modification of the first."

■ The rules the petitioners invoke often are useful and some times dispositive in the construction of a will. *See e.g., Pitman* v. *Rutledge*, 198 Va. 567, 95 S.E.2d 153 (1956); *Miller* v. *Citizens Nat. Bank*, 191 Va. 297, 60 S.E.2d 868 (1950). But those rules are subordinate to the maxim we have called the "guiding star" of construction.

> All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

*Wornom* v. *Hampton N. & A. Inst.*, 144 Va. 533, 541, 132 S.E. 344, 347 (1926) (citation omitted), *quoted in Powell* v. *Holland*, 224 Va. 609, 615, 299 S.E.2d 509, 512 (1983).

■ The principle applied in *Wornom* had early antecedents in opinions published nearly a century before.

> [T]he rule which assigns to a subsequent devise in a will the effect of revoking a previous one as being the latest manifestation of the testator's intention is never applied except where the two provisions are totally irreconcilable and where the real intention of the testator cannot be ascertained. Nor is it ever suffered to clash or interfere with the doctrine which enjoins upon the expositor to look for the intention of

the testator in the general tenor and context of the instrument and to qualify or even reject any clause or phrase that may be found incompatible with it; and though first expressed, this *general intent shall overrule the particular intent* afterwards disclosed.

*Hooe & als* v. *Hooe*, 54 Va. (13 Gratt.) 245, 251 (1856) (emphasis added) (citations omitted).

[W]here the subject [of a devise] is sufficiently and clearly ascertained, though there be added particulars of description which are found to be false or mistaken, effect will be given to the devise notwithstanding; and these *false or mistaken particulars of description will be rejected* . . . . So where a testatrix devised all her Briton Ferry estate, which was afterwards described as "situate, lying and being in the county of Glamorgan in the principality of Wales." A part of the Briton Ferry estate was in fact situate in the county of Brecon; yet held that the whole passed.

*Wootten* v. *Redd's ex'or & als*, 53 Va. (12 Gratt.) 196, 209-10 (1855) (emphasis added) (citations omitted).[2]

The parenthetical language Maggie used in her will to describe her interest in the Roy Picot farm shows that she was uninformed about the change in the statute of descent and distribution. Consequently, she was mistaken in her belief that all she owned was a dower interest and that the four children had acquired the balance as an inheritance from their father.

That mistake fully accounts for the precatory language expressing Maggie's hope that all the children would continue to utilize and enjoy the property. And we find no merit in the petitioners' argument that Maggie's use of the term "per stirpes" following the specific devise to William "indicates she had in mind a division of some type." Given the historic definition and function of that term, the division Maggie had in mind could not have been one among William and his siblings but only one among William's heirs in the event he predeceased his mother.

---

[2] In *Honaker* v. *Starks*, 114 Va. 37, 38, 75 S.E. 741-42 (1912), this Court held that a bequest of "my stock (one share)" passed five shares the testatrix owned at her death. The decision was based in part upon the rule in *Wootten* and in part upon the presumption against partial intestacy.

Significantly, the petitioners' contention that the will should be construed to devise a one-half interest in the farm to William implicitly acknowledges that Maggie intended to favor William over her other three children. We are of opinion that her "general intent" was to devise "all" she owned in the family farm to her favorite son and that her "particulars of description" were "false or mistaken". Applying the principles defined in *Wootten, Hooe,* and *Wornom,* we reject the particulars of description contained in the specific devise to William, and we will affirm the chancellor's construction of Maggie's will.

*Affirmed.*

THOMAS, J., dissenting.

The paramount aim in construing wills is to determine the intent of the person who made the will. "All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial." *Wornom v. Hampton N. & A. Inst.,* 144 Va. 533, 541, 132 S.E. 344, 347 (1926).

In this case, the majority has concluded that a mother of four children intended to give all she had to one of her children and leave nothing to three of her children. This construction is at odds with common sense, it exalts technical rules of construction over reason, and it amounts to a perversion of the decedent's announced desire that all her children remain a close-knit family.

Roy Picot and Maggie Eure Picot were husband and wife. Four children were born of their union: William, Lessie, Cora, and Roy, Jr. Roy, Sr. died in 1982. Maggie executed her will in 1983; she died in 1985. In her will she expressed this hope for her children: "It is my hope and desire that my home shall continue to be a home for all four of my children, and their [descendants], and I hope that they all continue to utilize the same and enjoy the same together." Keeping her children together as a family was Maggie's dying wish.

The main focus of the dispute concerning the will is what Maggie meant when she wrote as follows: "I give and devise all of my real estate, *it being my undivided dower interest in the Roy Picot farm, to my son, William Thomas Picot, in fee simple and abso-*

*lutely, per stirpes.*" (Emphasis added). Also of concern is what Maggie meant when she wrote these words: "All the rest and residue of my estate of every description, I give, devise and bequeath to my four children . . . in fee simple and absolutely and in equal shares, share and share alike, per stirpes."

The majority dismisses the emphasized language as "misdirection." In my opinion, that language cannot be so easily dismissed. It is plain to me that Maggie wanted William to have more than the other children, but that she wanted each child to share in her estate.

When Maggie executed her will, she either thought on her own or was misadvised that on her husband's death she took a one-third fee simple ownership of the farm and that the four children each took one-fourth of the remaining two-thirds interest in the farm. Thus, when Maggie executed her will she was of the mind that Lessie, Cora, and Roy, Jr. already owned an interest in their father's land. She did not want to give William all the farm; she only wanted to give him what she thought was her one-third interest in the farm. Maggie's announced desire that all the children use and enjoy the family home is totally at odds with an intent on her part to give all the property to William. There is no surer way to break up a family than to cut the majority of the family out of the proceeds of an estate.

Maggie was wrong, as a matter of law, in thinking that she owned only one-third of the farm in fee simple. The majority is correct in stating that by operation of statute the entire farm was hers. But the fact that Maggie owned the whole farm does not mean it was her intent to give the whole farm to William.

I would read the will as a whole, seizing upon every word and dismissing none. "[A] court must examine the will as a whole and give effect, so far as possible, *to all its parts.*" *Thomas* v. *Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988) (emphasis added) (citation omitted). I would construe the will to mean that under the second clause, William takes one-third of his mother's property in fee simple absolute. Further, I would conclude that the remaining two-thirds of the property should pass under the residuary clause such that each child will take one-fourth of two-thirds of Maggie's property. This result would comport with Maggie's intent that William take the most, but that each child take something. It would give each child an interest in the family home and thus, further Maggie's desire that the chil-

dren use and enjoy the family home "together." It would bring Maggie's children together as she wanted them to be instead of casting them into bitter factions for life.

I would reverse and remand for further proceedings consistent with these views.