## SHRINERS HOSPITALS FOR CRIPPLED CHILDREN

### V.

## NOAH MACK SMITH

Record No. 880305

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*MacKenzie Canter, III (Lehrfeld, Canter & Henzke*, on brief), for appellant.
*John P. McGeehan* for appellee.

Justice Lacy delivered the opinion of the Court.

The sole issue presented in this appeal is whether a vested remainderman has the right to an accounting from the trustee when the terms of the trust do not specifically provide for such an accounting.

On September 23, 1983, Mary L. Robertson executed an *inter vivos* trust, naming Noah Mack Smith (Smith) as trustee. The trust agreement provided that, during Robertson's lifetime, Smith would distribute to her the entire net income of the trust plus so much of the principal as Robertson should request. Upon Robertson's death, Smith was directed to pay all the trust income to Ethel Maxwell, Robertson's sister. Upon Maxwell's death, Smith was directed to pay all the trust income to Elizabeth Equi, Robertson's niece, if she were alive and unmarried. The agreement further provided that upon Equi's death, marriage, or cohabitation, Smith was to turn over the principal and any income to Shriners Hospitals for Crippled Children (the Hospital). Robertson died on May 17, 1984. Her will provided that her residuary estate be made part of the trust corpus and administered according to the terms of the trust.

The trust directed Smith to "furnish to the current beneficiary an accounting at least once a year. . . ." On three occasions, the Hospital wrote to Smith requesting a copy of his annual account-

ing. Smith never responded. Thereafter, the Hospital filed a bill of complaint on October 1, 1987, seeking an accounting from Smith. Smith demurred on the ground that "[n]either the trust agreement nor the laws of Virginia require interim accounting to a remainderman." The court sustained the demurrer, and the Hospital appealed. We reverse.

The trust only instructs the trustee to account to the "current beneficiary." The Hospital is a vested remainderman under Virginia law. *Disney* v. *Wilson*, 190 Va. 445, 57 S.E.2d 144 (1950). However, its interest is not yet that of a current beneficiary. The trust makes no direct reference to the Hospital or to a vested remainderman having the right to an accounting. Therefore, the trust itself does not provide the Hospital with the right to an accounting.

Nevertheless, the Hospital contends that, as a vested remainderman, it does have the right to an accounting under general equity principles. We have held that a trustee should always conduct himself fairly and impartially, never favoring one beneficiary over another, in order to "preserve and protect the trust fund for the benefit of all interested in the distribution thereof." *Patterson* v. *Old Dominion Trust Co.*, 139 Va. 246, 257, 123 S.E. 549, 552 (1924). The interest of current beneficiaries in the administration of the trust is obvious, and it is well settled in Virginia that they are entitled to an accounting by the trustee. *Rinker* v. *Simpson*, 159 Va. 612, 166 S.E. 546 (1932). Those with a vested remainder also have a present interest in the trust. *Disney*, 190 Va. at 455, 57 S.E.2d at 149 (citing *Allison* v. *Allison*, 101 Va. 537, 569, 44 S.E. 904, 915 (1903)). Such a present right supports a present interest in the administration of the trust assets.

The Hospital urges that the interests of the vested remainderman in the present administration of the trust are of no lesser magnitude than those of current beneficiaries. Therefore, there is no basis to provide an accounting to one group but deny the accounting to the other group.

Although this is a case of first impression in Virginia, prevailing American jurisprudence holds that a vested remainderman has standing to compel a trustee to account for his management of the trust assets. Section 172 comment c of the Restatement (Second) of Trusts (1959) states in part:

> The trustee may be compelled to account not only by a beneficiary presently entitled to the payment of income or principal, but also by a beneficiary who will be or may be entitled to receive income or principal in the future.

*Accord* G. Bogert, *Trusts* § 142 (6th ed. 1987); IIA A. Scott and W. Fratcher, *Law of Trusts* § 173 (4th ed. 1987). The majority of jurisdictions adhere to the rule that a vested remainderman has the right to an accounting without having to allege mismanagement or wrongdoing. *See, e.g., Killeen* v. *Chico*, 328 S.E.2d 184 (W.Va. 1985); *Matter of Polson*, 21 Wash. App. 489, 585 P.2d 840 (1978); *Engelsmann* v. *Holekamp*, 402 S.W.2d 382 (Mo. 1966).

■ Smith relies on *Central Hanover Bank & Trust Co. (Momand)*, 176 Misc. 183, 26 N.Y.S.2d 924 (1941), for the proposition that remaindermen have no interest in the assets of an *inter vivos* trust, and, therefore, have no right to an accounting. Smith's reliance on that case is misplaced. In *Central Hanover Bank*, the contingent remaindermen sought their accounting while the creator of the trust was still alive. At this point, she had the right to demand an accounting herself and had the power to revoke the trust at any time. *Id.* at 185-86, 26 N.Y.S.2d at 927. The ability of the trust's creator to demand an accounting or revoke the trust ceased to exist in this case with Robertson's death in 1984. Thus, only the persons with a present interest in the trust assets have standing to demand an accounting from the trustee. Unlike the contingent remaindermen in *Central Hanover Bank*, the Hospital has a present interest in the trust assets. Therefore, *Central Hanover Bank* does not apply to the case at bar.

■ We hold that, under general equity principles, a vested remainderman has the right to an accounting from the trustee, even though the terms of the trust do not provide for such an accounting. We believe that the benefit the vested remainderman will receive in knowing the status of the trust assets far outweighs any burden on the trustee to provide the accounting.

For the reasons set out above, we will reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*