# Anne H. Sturgis

## v.

# Susan Sturgis Stinson, et al.

Record No. 901150

April 19, 1991

Present: Carrico, C.J., Stephenson, Russell, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

*Bruce D. Jones, Jr. (Jones, Preston & Grillo*, on brief), for appellant.

*Daniel Hartnett (Ayres & Hartnett*, on brief), for appellee Robert C. Oliver, Jr., Executor.

*Glen A. Tyler (Tyler, Custis, Lewis & Dix*, on brief), for appellees Susan Sturgis Stinson and Christopher Starr Sturgis.

JUSTICE LACY delivered the opinion of the Court.

In this will construction case, we determine whether the testator placed restrictions on the amount of income which the income beneficiary was to receive and, if not, whether the executor was required to administer the assets of the trust created by the will in a manner which did not discriminate between successive beneficiaries and which produced a reasonable level of income in relation to the value of the trust assets.

Dr. William J. Sturgis, Jr., died testate in 1986, leaving an estate valued at $1,140,462, consisting of an automobile, approximately $300,000 in various stocks and bonds, and two parcels of real estate — Bush Hill Farm (the farm), valued in the estate inventory at $708,500, and a one-third undivided interest in another parcel of land with a value of $126,000. His will provided

that his widow, Anne Sturgis, receive all the income from his estate for her lifetime. At her death, or if she were to renounce the income, the residue of the estate was to pass to his children, Susan Sturgis Stinson and Christopher S. Sturgis (the remaindermen).

The testator named his wife and Robert C. Oliver, Jr., as co-executors. Upon the wife's election not to serve, Oliver qualified as executor of the estate. In 1989, he filed a bill of complaint stating that the income beneficiary, Mrs. Sturgis, had complained that "the income derived from the estate is insufficient based upon the value of the assets of the estate" and asked that property of the trust be sold and so reinvested as to derive greater income. The remaindermen opposed the sale of the property and maintained that the trust assets could not be sold without their consent. The executor sought the guidance of the chancellor.

After an *ore tenus* hearing, the court entered a final decree holding that the will "created a trust;" that the executor had the obligation to deliver all the net income of the trust to Mrs. Sturgis and to invade the trust corpus when he determined the income therefrom was insufficient to meet the needs of the income beneficiary; that the executor had the "authority, but not the obligation, to convert assets of the estate . . . including real estate, to forms other than those in which he received them, so long as he behaves consistently with the 'prudent man' rule;" and that the executor "has performed properly under the terms of the will." We awarded Mrs. Sturgis, the income beneficiary, an appeal from this decree.

The primary controversy here revolves around a single, but valuable, asset of the trust — Bush Hill Farm. This farm constitutes approximately 75% of the corpus of the trust and, at the time of trial, had a fair market value of $1.5 million. The maximum annual net income generated by this asset and paid to Mrs. Sturgis was $1,265.99 in 1988.

Mrs. Sturgis asserts that this return on the property, representing eighty-four one-thousandths of one percent of its fair market value, classifies this property as an unproductive asset and that, under general trust principles, the executor has an obligation to sell it and reinvest the proceeds. The executor and remaindermen contest Mrs. Sturgis' assertion that selling the farm is required in this case.

Under general trust law principles, where, as here, a trust is created for successive beneficiaries, the trustee has a duty to

deal impartially with them. *Shriners Hospitals* v. *Smith*, 238 Va. 708, 710, 385 S.E.2d 617, 618 (1989); *Patterson* v. *Old Dominion Trust Co.*, 139 Va. 246, 257, 123 S.E. 549, 552 (1924). The parties agree that the executor's duties in relation to trust assets set out in the Restatement (Second) of Trusts embody sound and appropriate principles:

> The trustee is under a duty to the beneficiary to use reasonable care and skill to make the trust property productive.

Restatement (Second) of Trusts § 181 (1959).

> Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of return on trust investments, and is likely to continue unproductive or underproductive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time.

*Id.* at § 240.

The executor and remaindermen assert that the trial court was correct in declining to apply these principles and require sale of the farm because the disposition and management of the farm and other trust assets were "otherwise provided by the terms of the" will. The remaindermen argue that the testator intended that the farm not be sold unless necessary to meet the needs of the income beneficiary. The executor argues that as long as the income beneficiary is receiving income sufficient to meet her needs, his discretion as to the management of trust assets should not be disturbed.

In contrast, Mrs. Sturgis argues that the will places no condition or limitation on the amount of income she is to receive and contains nothing to support the inference drawn by the chancellor that the testator wished to retain the farm as a family heritage.

Resolution of the dispute rests upon the testator's intention as reflected in the will. The chancellor held that Mrs. Sturgis was entitled to "all net income of the trust," but he also found that the testator intended that she receive income necessary to provide her with "comfortable maintenance and welfare according to her standard of living." Therefore, the trial court concluded, in effect, that

the executor was not required to manage the trust assets in a manner designed to provide income in excess of that amount.

■ As a general rule, the factual determinations of the trial court are accorded substantial deference on review and will be reversed only if plainly wrong or without evidence to support them. However, that standard is inapplicable here because the trial court's conclusions regarding the testator's intent and its construction of the will were opinions based solely on the will, and on testimonial evidence and other documents not in material conflict. *Hankerson* v. *Moody*, 229 Va. 270, 274, 329 S.E.2d 791, 794 (1985); *Durrette* v. *Durrette*, 223 Va. 328, 332, 288 S.E.2d 432, 434 (1982); *Rinehart & Dennis Co.* v. *McArthur*, 123 Va. 556, 567, 96 S.E. 829, 833 (1918). We begin our review by examining the relevant portions of the will.

■ Paragraph Four of the will consists of three sections. The first declares that Mrs. Sturgis is to receive "[a]ll of the income of my estate, of every nature and wheresoever situate," during her lifetime.

The second section of Paragraph Four provides that:

If at any time, . . . in the opinion of my Co-Executor, . . . the income of my estate together with such other income available to my wife is insufficient to meet any unusual expense . . . or to provide for her comfortable maintenance and welfare, then such Co-Executor may pay to my wife . . . such amounts from the principal or corpus of my estate as such Co-Executor deems necessary for such purposes.

■ The final section of Paragraph Four provides that when Mrs. Sturgis dies or "if she should decide that she has no need for such income" the estate devolves upon Christopher Sturgis and Susan Stinson.

Paragraph Six provides in pertinent part:

It is my will, and I direct that my Executors and their successors have, in addition to all other powers granted by law, the powers set forth in Section 64.1-57 of the Code of Virginia (1950), as in force on the date of the execution of this will, together with the right to sell, pledge, or hypothecate real estate and other property.

Contrary to the argument advanced by the executor and the remaindermen, the second section of Paragraph Four imposes no limitation on the first section of that paragraph. Indeed, the second section confers a separate benefit upon the widow; in the event the income otherwise available to her "is insufficient to meet any unusual expense . . . or to provide for her comfortable maintenance and welfare," the executor is empowered to invade and deplete the corpus of the trust for her benefit. Consideration of the widow's need is of concern to the executor and a precondition to his actions only for depletion of the trust corpus. The power to deplete the corpus for that purpose is irrelevant to the issues framed in this appeal.

The power of the executor to convert and reinvest corpus assets is granted by Paragraph Six, in which the executor is given the right to dispose of property and to exercise all powers and rights afforded a fiduciary under general law and as set forth in Code § 64.1-57. The will does not specify any criteria of need or other preconditions for the executor's exercise of these powers. Nor is there any indication that the income beneficiary would receive anything less than all the net income, regardless of amount, and irrespective of need, generated from the executor's exercise of his investment and management authority.

This interpretation is consistent with certain actions of the executor. As he testified, he had converted a number of the stocks in the trust corpus to investments that generated more income, including some stocks which would have appreciated in value but which did not generate much income. His conversion of the trust corpus was not limited to personalty; the executor had also agreed to the sale of a portion of the real estate in which the trust held a one-third undivided interest. There is no indication in the record that the executor sought the remaindermen's consent for this sale, that the conversion was required due to Mrs. Sturgis' unusual expenses, or that the payment to Mrs. Sturgis of the income the new assets produced was based on the executor's determination of her need.

Furthermore, there is nothing in the will or the record to suggest that the executor was required to treat Bush Hill Farm in a different manner than other trust assets. Although the testator easily could have addressed the disposition of the farm, he did not. Indeed, the will does not even refer to the farm specifically. While Bush Hill Farm had been in the Sturgis family for many years,

neither the remaindermen, Dr. Sturgis, nor his parents had ever lived on the property. The only dwellings on the property were tenant farmers' shacks which had burned prior to Dr. Sturgis' death. This record does not reflect any connection the testator had with this piece of property which would support the conclusion that the testator intended to distinguish its treatment from that to be accorded other real or personal property in the trust.

We conclude, therefore, that the testator intended that Mrs. Sturgis, the income beneficiary, receive unconditionally all the income generated by the trust's assets. Additionally, if, in the opinion of the executor, the income from the trust and any other income available to her should become insufficient to meet her needs, the executor would be required to provide payments to her directly by depleting the corpus of the trust. Furthermore, we conclude that the testator did not intend to, and did not, direct or restrict the executor's management of the trust's assets, including Bush Hill Farm, except as provided under general law.

We have not previously addressed the duty of a fiduciary regarding the level of productivity of trust assets in circumstances where there are successive beneficiaries and no explicit instruction by the testator concerning that duty. *Patterson* v. *Old Dominion Trust Co.*, 149 Va. 597, 612-13, 140 S.E. 810, 814-15 (1927) (explicit instruction). We agree with the parties that the trust principles expressed in the Restatement and quoted above are appropriate, and we adopt them here.

Except for the directive on depletion of the corpus occasioned by Mrs. Sturgis' needs, the will contains no other directions regarding the management of the trust assets. Although the management discretion afforded a trustee under the Code of Virginia is extensive, *see* Code §§ 64.1-57 and 55-253 *et seq.*, that discretion is subject to the requirements of the "prudent man rule," Code § 26-45.1. The Restatement principles adopted above define a trustee's obligations under the "prudent man rule" regarding productivity of trust assets. These principles are applicable to the executor in this case, as the return generated by Bush Hill Farm is so disproportionate to its value, the farm is rendered an unproductive asset.

In a second assignment of error, Mrs. Sturgis asserts that the chancellor erred "by failing to require the Trustee to sell unproductive trust assets and to allocate a portion of the proceeds of such sale to the income beneficiary as required by the Uniform Principal and Income Act, Va. Code §§ 55-253, *et seq.*" That Act

provides that whenever any asset of a trust, real or personal, is unproductive, the income beneficiary "shall be entitled to share in the net proceeds received from [conversion of] the property as delayed income." Code § 55-263(1). The term "delayed income" is defined as

the difference between the net proceeds received from the property and the amount which, had it been placed at simple interest at the rate of five per centum per annum for the period during which the change was delayed, would have produced the net proceeds at the time of the change . . . .

Code § 55-263(2). The period of delay is calculated "from the time when the duty to make [a change] first arose, which shall be presumed, in the absence of evidence to the contrary, to be one year after the trustee first received the property if then unproductive, otherwise one year after it became unproductive." Code § 55-263(3). We think these principles are also applicable here.

We will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion, including the allocation to the income beneficiary of any delayed income to which she reasonably may be entitled.

*Reversed and remanded.*

JUSTICE RUSSELL, with whom JUSTICE STEPHENSON joins, dissenting.

The principles of law that govern cases of this kind are well settled: the testator's intention, if legal and ascertainable, controls. All refinements of the law must yield to the testator's power to dispose of his property as he pleases. When this intention is ascertained, the quest is ended and all other rules become immaterial. *Picot* v. *Picot*, 237 Va. 686, 689, 379 S.E.2d 364, 366 (1989) (quoting *Wornom* v. *Hampton N. & A. Inst.*, 144 Va. 533, 541, 132 S.E. 344, 347 (1926)). In ascertaining the testator's intention, the court must examine the will as a whole, giving effect to all its parts if that can be done. *Thomas* v. *Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988). The intention to be considered is that which is spoken by the words of the will, not an intention deduced from speculation as to what the testator would have done had he anticipated a change in the circumstances surrounding him

at the time of its execution. *Christian* v. *Wilson's Ex'rs*, 153 Va. 614, 632, 151 S.E. 300, 305 (quoting *Compton* v. *Rixey's Ex'ors*, 124 Va. 548, 553, 98 S.E. 651, 654 (1919)), *cert. denied*, 282 U.S. 840 (1930).

The will of Dr. Sturgis is unambiguous and his overall intention is clear from its words. He wanted his widow to enjoy all income arising *from his estate* during her lifetime. If she should experience unusual expenses, or if the income of *his estate*, together with any "other income available to [his widow]" should prove insufficient to provide for her "comfortable maintenance and welfare," then the co-executor was authorized to invade the corpus to the extent necessary, in the co-executor's discretion, to bring the widow's income up to that standard. At the widow's death, if she should not sooner renounce the income, the corpus of the estate was to pass to his two children. That, in a nutshell, is the intent of Dr. Sturgis as expressed in his words, and that is the way the trial court construed his will.

Unfortunately, the majority opinion appears to be based upon the notion that when Dr. Sturgis wrote paragraph six, he had forgotten paragraph four. The opinion considers the two provisions in isolation, rather than construing the will as a whole. Indeed, the opinion goes so far as to say that the executor's power to invade the corpus "has nothing whatever to do with the issues framed on this appeal."

When Dr. Sturgis executed his will, he knew what his assets were. He knew that some parts of his estate produced substantial income, which would primarily benefit his widow, and that other parts would produce little income, but would constitute a substantial inheritance for his children. When he spoke of "my estate," he necessarily contemplated that combination of income-producing and non-income-producing assets. If he had intended that his executors convert all his assets into investments producing high income, he could easily have said so. Rather, he provided that his widow receive "the income of my estate."

Land is not fungible. It is idle to speculate as to the testator's reason for retaining the farm as a part of his estate, for his children's benefit, rather than directing his executors to convert it into income-producing investments. The fact remains, however, that for his own reasons, he did so. He could have sold it during his lifetime, as his parents before him might have done, but he did not. Despite its deficiency as a producer of income, the farm was a

part of the estate which passed under the will and which he contemplated as one of the sources of income for his widow.

Construed according to the testator's clear intentions, the co-executor had authority to sell timber from the farm, or to sell or encumber the land, in whole or in part, as might be necessary to maintain the widow comfortably, *but not otherwise.* That view is reinforced by the circumstances surrounding the testator at the time of execution of his will. Mrs. Sturgis was not the mother of Dr. Sturgis' children; they were the children of a prior marriage. Mrs. Sturgis came into the marriage with income-producing assets of her own, and it was not apparent that it would ever become necessary to invade the corpus to maintain her comfortably. As it turned out, the co-executor determined that she did need additional income by the time this suit was instituted, and the trial court ruled that the co-executor should invade the corpus as necessary for that purpose.

In my view, paragraph six of the will merely arms the executors with all the powers requisite to carry into effect the intent expressed in paragraph four. Paragraph six does not require the executors to do anything. It certainly does not authorize them, or us, to disregard the clear intent of the testator, to treat land as if it were stocks and bonds, or to require conversion of the land into income-producing assets to the detriment of the testator's children.

Accordingly, I would affirm.