## CIRCUIT COURT OF WARREN COUNTY

In re Estate of
Beulah Mae Stokes

January 13, 1995

Case No. (Fiduciary) WF92-4

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on January 11, 1995, for hearing on exceptions filed by a beneficiary of the will, Janet Robinson, to the Commissioner of Accounts' approval of the executors' 1992 accounting filed in this case, which exceptions challenge the reasonableness of certain expenses incurred by the executors in the management of the estate. The parties appeared with their counsel, Robert T. Mitchell, Jr., and Elizabeth E. Kellas, for the Complainant Robinson, and Dale W. Houff for the Executors. Evidence was heard *ore tenus* and argued by counsel. Upon consideration thereof, the Court has made the following decision to sustain the exceptions in part and to deny them in part.

### I. *Findings of Fact*

The following facts were either agreed to or found by the greater weight of the evidence.

Beulah Mae Stokes died testate on January 3, 1992, in Warren County, Virginia. Her Last Will and Testament with Codicils was duly probated in the Warren County Clerk's Office and is recorded in Will Book 27 at page 589. Complainant's Exhibit 1.

At the time of her death, Beulah Mae Stokes had three living children, Geraldine Ebert, Janet Robinson, and Charles Golden. All three children are beneficiaries under the Will. Geraldine Ebert and her husband, William R. Ebert (hereinafter referred to as "Executors") were named as co-executors by Beulah Stokes and have been acting in that capacity since her death.

Beulah Stokes' gross estate is $2,304,566.00, most of which was real estate. The principal asset in the estate, and the one whose management is at issue in this case, is a parcel of property at the intersection of Routes 55 and 522 in Front Royal, Virginia, which is improved by four buildings, which in the aggregate contain about 41,000 square feet. The property is comprised of six commercial units, ten residential units, and an UPS distribution facility.

By her will Beulah Stokes devised certain property and assets that have been managed by the Executors since her death. The business and assets relevant to this action are those properties and assets falling under the management of "Stokes Rental Company," which is a rental business which the decedent operated prior to her death.

Debra Hyatt, the executors' daughter and the decedent's granddaughter, managed the Stokes Rental Company from 1984 through May 1987, and from November 1988 through 1992. At the time of Mrs. Stokes' death, her personal account was segregated from her business accounts, all of her accounts were in good order, she had employed an accountant for years who was both familiar with her business and her record keeping system, and she had an attorney with whom she and her family regularly dealt.

In the years preceding Mrs. Stokes' death, Debra was paid the following amounts to manage more property than the estate had in 1992:

| Year | Salary |
|------|--------|
| 1989 | $19,540 |
| 1990 | 23,092 |
| 1991 | 33,950 |

Mrs. Stokes suffered from Parkinson's disease, and in the years preceding her death, she was gradually liquidating and reducing her estate, and Stokes Realty Company sold some of its assets.

On January 28, 1992, the Executors send their daughter, Debra Hyatt, a letter requesting that she act as manager of Stokes Rental Company. Complainant's Exhibit 2. On September 28, 1992, the Executors entered into a "Memorandum of Understanding" agreeing to pay Debra Hyatt $35.00 per hour to manage the rental properties. Complainant's Exhibit 3.

Debra Hyatt managed Stokes Rental Company during the relevant accounting period from January 1, 1992, until December 31, 1992. During this accounting period, Debra Hyatt was paid by the estate $7,918.50 for estate administration work, and $33,488.66 to manage Stokes Realty Company. Additionally, the estate paid a receptionist $10,130.16, and a main-

tenance man $21,119.60. Furthermore, the Executors authorized Debra Hyatt to maintain a full-time office for the operation of Stokes Rental located within one of the estate owned properties as had historically been done. The Complainant objects to all of these actions by the Executors.

In 1992, Debra Hyatt negotiated with new tenants ten residential leases and two commercial leases. She also negotiated the renewal of one commercial lease, and negotiations with UPS, which began in 1991, resulted in a formal agreement in March 1992.

The Executors filed a First Accounting of the Estate. Complainant's Exhibit 4. This accounting was approved by the Commissioner of Accounts, and the Complainant filed Exceptions to the approval claiming that the expenses of Stokes Rental Company were unreasonable, that the rental office was unnecessary, and that the accounting failed to itemize expenditures made in the operation and management of the business and assets known as "Stokes Rental Company."

During the 1992 accounting period, the Stokes Rental Company properties could have been managed by a professional real estate management firm at a reasonable rate not exceeding twelve percent of the gross rental receipts.

In 1992, the commercial rental market was depressed in Front Royal, and a competing facility had been constructed near the estate's rental complex. The evidence fails to show that the office occupied by Stokes Rental Company could have been leased in 1992.

The Executors of the Estate entered into a second agreement with their daughter, Debra Hyatt, to pay her to "perform certain functions for the Estate of Beulah M. Stokes." For performing these functions, the Executors agreed to pay their daughter $27.00 or $35.00 per hour regardless of the nature of the function performed. This agreement was formalized into a "Memorandum of Agreement." dated September 28, 1992. Complainant's Exhibit 6.

Debra Hyatt was paid a reasonable fee to carry out estate business. An itemized listing of her work performed is filed as Complainant's Exhibit 7.

Throughout the period of administration of this Estate, Janet Robinson raised objections through her attorney to the management of the Estate's property by a family member at such expensive rates.

## II. *Conclusions of Law*

The *ex parte* settlement of the executors' accounts by the Commissioner of Accounts is *prima facie* evidence of its correctness, and the burden of

proof is on the person objecting to the accounting to prove their objections by the preponderance of the evidence where the facts are in dispute. *See Radford v. Fowlkes*, 85 Va. 820, 841-842, 8 S.E. 817 (1889).

Virginia Code § 26-45.1 codifies the prudent man rule and states:

> [I]n ... managing property for the benefit of another, a fiduciary, whether individual or corporate, shall exercise the judgment of care, skill, prudence, and diligence under the circumstances prevailing from time to time, (including, but not limited to, general economic conditions, anticipated tax consequences, the duties of the fiduciary, and the interests of all beneficiaries) that a prudent person familiar with such matters and acting in his own behalf would exercise under the circumstances in order to accomplish the purposes set forth in the controlling document.

This prudent man rule governs the management of an estate by an executor. *See Sturgis v. Stinson*, 241 Va. 531, 404 S.E.2d 56 (1991).

In *Commercial and Sav. Bank of Winchester v. Burton*, 183 Va. 133, 149-150, 31 S.E.2d 289 (1944), the Supreme Court set forth the analysis to apply to the fiduciary's conduct to determine whether it conformed to the prudent man rule:

> In the case of *Powers v. Powers, supra*, this court quoted from Harrison on Wills and Administration, vol. I, p. 705:
>
> "The inquiry in every case in which it is sought to fix a liability upon a fiduciary is:
>
> 1. Did he act within the scope of his powers and duties?
> 2. Did he act in good faith?
> 3. Did he act with ordinary prudence?
>
> If he did so act, he is not responsible for the consequences of the act, though it result in the loss of the trust fund, or some part of it."
>
> The same principles, expressed in a different way were stated by this court, through Mr. Justice Holt, in *Harris v. Citizens Bank, etc., Co., supra*:
>
> "The standard by which the conduct of trustees, executors, and other fiduciaries is to be measured has been many times stated and restated, both in this State and elsewhere. They are required to do those things which a man of reasonable intelligence and prudence would be expected to do in the management of his own affairs, but this rule, like most rules, is to be con-

strued in the light of the conditions obtaining when it is applied."

As Executors, Geraldine and William Ebert, must do those things which a person of reasonable intelligence and prudence would do in the management of their own affairs.

The Executors failed to manage the Stokes Rental Company with reasonable prudence. While the Executors acted within their powers and in good faith, they acted unreasonably by hiring their own daughter to manage the properties at an excessive salary rate, and by continuing to employ a receptionist after July 1, 1992. While the decedent was alive, Debra Hyatt could be paid for her services at a level above the market rate. However, when Mrs. Stokes died, fiduciary duties devolved upon the executors, and they were required to objectively evaluate all their financial arrangements. By July 1, 1992, the reasonably prudent executor would have:

1. Terminated the receptionist thereby saving her salary for six months, which is $5,065.00; and

2. Retained a management company to manage the rentals at a rate not exceeding twelve per cent of the annual rentals.

Employing a professional management company to manage the property would both save money and make the property more attractive to a third party, because of both the higher rate of return on the office complex and the fact that a third-party professional was in place managing the property.

Had a professional management company been employed as of July 1, 1992, the estate would have saved $9,964.00 in 1992, which was calculated as follows:

| | |
|---|---|
| Hyatt salary / 2 | = $16,719 |
| Less: Management fee | |
| $112,578/2 x .12 | = $6,755 |
| Total savings | $9,964 |

Debra Hyatt was a competent property manager, but the rate of compensation she was paid was a product of her close, familial relationship with the testator and the executors and was significantly above the market rate charged for such services in Front Royal in 1992.

Article XVIII of the decedent's will limited the total compensation of the executors to a total of $1,000.00, which is an amount which both

required the executors to employ other persons to perform services which executors customarily perform and which manifests the testator's concern that her estate be managed efficiently.

In *Clare v. Grasty*, 213 Va. 165, 170, 191 S.E.2d 184 (1972), the Supreme Court stated:

> Code § 26-30 provides:
>
> "The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts, or otherwise."
>
> It is well settled that the allowance of a commission is within the sound discretion of the trial court. However, a commission should be allowed only when the executor has faithfully discharged his duties to the estate in his charge. A fiduciary's compensation is based upon the services he has rendered in behalf of the estate or trust. *Dearing v. Walter*, 179 Va. 620, 623, 20 S.E.2d 483, 484 (1942). Where there has been partial performance of duty that has been of value to the estate and partial failure to execute such duty, partial compensation may be permitted. *Cannon v. Searles*, 150 Va. 738, 750, 143 S.E. 495, 499 (1928).
>
> The statute also provides that a fiduciary is entitled to any reasonable expenses incurred by him in his capacity as a fiduciary. An executor may, in good faith, seek the aid of counsel in the execution of his duties. However, in addition to good faith there must be some reasonable ground that renders the employment of counsel reasonably necessary to aid the executor in the performance of his duties. If counsel is employed under these circumstances, then reasonable expenses incurred by such employment are assessable against the estate. *Stull v. Harvey*, 112 Va. 816, 822, 72 S.E. 701, 703 (1911). But expenses of counsel for services rendered not in aid of the executor in the performance of his duties are not chargeable against the estate.

The $7,918.50 paid to Hyatt for her work done incident to the administration of the estate was reasonable. It was also reasonable to retain the maintenance man, who was familiar with the properties, during 1992, during which time he also worked improving estate property for sale and

generally maintaining property in the estate. While the amount of the executor's commission depends upon the value of the services provided, Virginia Code § 26-30, the courts have frequently approved fiduciaries' fees in the range of five percent of the total assets under their control. *See Perrow v. Payne,* 203 Va. 17, 25, 121 S.E.2d 900 (1961). The amounts paid to the maintenance man and to Debra Hyatt for her estate work fall well within the range of compensation customarily paid to an executor to manage an estate of this size.

The evidence failed to show the Stokes Rental Company office could have been rented in 1992 as claimed by the Complainant.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered as follows:

1. The Court sustains in part Complainant's exceptions to the First Accounting as approved as stated in this decree with respect to Debra Hyatt's and the receptionist's salary for the last six months of 1992; otherwise, the exceptions are denied.

2. The Executors are hereby ordered to pay the estate the sum of $9,964.00 (difference between Hyatt's salary last six months and a management fee for that period), and the sum of $5,065.00 (receptionist's salary last six months of 1992), a total of $15,029.00, with interest from January 1, 1993. In the alternative, the Executors may deduct this sum with interest from any fees they shall receive as Executors and future distributions due them from the estate.

3. The Executors shall pay a maximum rate not to exceed 12% of the gross rental income, plus necessary maintenance expenses, to any person or entity managing the property of Stokes Rental Company.