WESTMORELAND COUNTY VOLUNTEER RESCUE SQUAD

V.

JOHN L. MELNICK, EXECUTOR OF THE ESTATE OF
MARTHA VIRGINIA SANFORD, DECEASED, ET AL.

Record No. 910770

February 28, 1992

Present: All the Justices

*William H. Hoofnagle, III (Christopher S. Dillon; Owaiian M. Jones; Florance, Gordon and Brown,* on briefs), for appellant.

*James T. Robinson (Hutt & Robertson,* on brief), for appellee Montross Volunteer Rescue Squad, Inc.

No brief or argument for appellees John L. Melnick and Colonial Beach Rescue Squad, Incorporated.

JUSTICE COMPTON delivered the opinion of the Court.

In this will construction case, we determine whether the trial court correctly ruled that a beneficiary not named in the will should share in the distribution of the testator's residuary estate.

In January 1990, Martha Virginia Sanford, a resident of Nomini Grove in Westmoreland County, died at age 105. She left a will, handwritten by her attorney, dated in December 1977. After making several specific bequests, the testator directed that: "All the rest shall go to the Rescue Squad - Hague, Westmoreland County, Va."

The will was duly probated and the attorney, John L. Melnick, qualified as executor of the estate. Subsequently, he brought this suit asking the trial court to construe the will and to determine who is entitled to the residuary bequest. Named as defendants in the suit were appellant Westmoreland County Volunteer Rescue Squad, appellee Montross Volunteer Rescue Squad, Inc., and Colonial Beach Rescue Squad, Incorporated. Responding, the Westmoreland Squad asserted the testator intended that it shall be the sole and exclusive beneficiary of the residuary estate; the Montross Squad contended that it should share in the bequest.

Following a November 1990 ore tenus hearing, the chancellor ruled in a January 1991 opinion that the executor should distribute the residuary estate, of approximately $500,000, as follows: 55% to the Westmoreland Squad and 45% to the Montross Squad. We awarded the Westmoreland Squad an appeal from the

February 1991 final decree. The Colonial Beach Squad took no part in the litigation either at the trial or appellate level.

■ Recently, we summarized principles which are applicable here. The paramount rule in will construction is that the testator's intention controls; the problem is to ascertain it. *Gillespie* v. *Davis*, 242 Va. 300, 303, 410 S.E.2d 613, 615 (1991). This intention must be ascertained, if possible, from the language of the document. *Id.*

■ Where the language of a will is clear and unambiguous, extrinsic evidence may never be used in aid of the will's interpretation. But, where the language is ambiguous, susceptible to more than one interpretation, two classes of extrinsic evidence may be admitted. *Id.* at 303-04, 410 S.E.2d at 615.

■ The first class is so-called "facts and circumstances" evidence, that is, "evidence about the testator, the testator's family and property; the claimants under the will and their relationship to the testator; the testator's hopes and fears; the testator's habits of thought and language; and similar matters." *Id.* at 304, 410 S.E.2d at 615-16. The second class is so-called "declarations of intention" evidence, that is, extrinsic statements by the testator of her actual testamentary intentions, indicating what she has done or designs to do by the will. *Id.* This latter class is confined to cases of "equivocation," where the language of the document describes "equally well two or more persons or two or more things." *Id.* at 304, 410 S.E.2d at 616.

At the hearing, evidence of the second class was received, there being no dispute that the designation of the residuary beneficiary was ambiguous and that the words in the will may describe equally well two entities. This evidence is not in conflict.

On the day the will was prepared, the testator had asked her attorney to come from his Arlington office to her Westmoreland County home to discuss her estate plan. Because she wanted to execute a will that day, the attorney wrote the will by hand in her presence.

After discussing the specific bequests, counsel asked "who she wanted the bulk of her estate to go to." According to the attorney, the testator said, " 'I want the rest of my estate to go to the rescue squad.' " She told counsel that "on several occasions . . . they had saved her life, and that she couldn't think of any one more deserving than the rescue squad."

When counsel asked the testator for "an accurate description of the rescue squad," the testator "went and got the phone book." Turning to the listings for rescue squads, the testator said, "when I need the rescue squad, I call the Hague."

The page from the directory, introduced in evidence, shows a number of Northern Neck communities, including Hague, listed with telephone numbers under the heading "Rescue Squads"; the directory does not show the specific name of any squad.

Counsel testified that he "copied exactly" from the directory and asked the testator, " 'What is the name of the rescue squad?' And she said, 'Westmoreland County Rescue Squad.' So we put rescue squad and then followed right down the phone book, Hague or the Hague, Westmoreland County, Virginia. So that was exactly as she told me to put it in her will."

The attorney further testified that in his discussion with his client "with regard to the rescue squad and what she intended," she "never" indicated an intention that the bequest should "go to specific individuals" nor "did she mention any specific people by name." He stated that she did not "mention any geographic area that she wanted covered or wanted the rescue squad to cover." When asked, "Did you have any question in your mind that she was telling you . . . an organization, a specific organization, she wanted to receive the money," counsel responded, "It was my understanding that that was the rescue squad—that that was the only rescue squad . . . the rescue squad shown in the phone book as being in Hague."

The evidence showed that in December 1977, when the will was executed, only two rescue squads regularly served Westmoreland County. The Colonial Beach Squad covered the "upper" one-third. The Westmoreland Squad covered the "middle" one-third and the "lower" one-third, which included the Nomini Grove area where the testator resided.

The Westmoreland Squad had been organized in 1965. The attorney who handled the incorporation of the squad listed its address at Hague, his home, although the actual base of operations for the group was at nearby Mt. Holly, both communities also being in the county's "lower" one-third. Even though the squad was based at Mt. Holly, and kept several vehicles at Montross to be near some of its members, the squad continued to show the Hague designation in the telephone directory and to receive its telephone calls through the Hague exchange.

The trial court admitted, over the Westmoreland Squad's objection, evidence of events which occurred between the date of the will and the date of the testator's death. This evidence showed that in 1988, a number of the members of the Westmoreland Squad, several of whom had attended the testator, left that group and decided, along with others, to organize the Montross Squad, a separate and independent rescue squad based at Montross, located in the middle one-third of the county.

After establishment of the Montross Squad, the three squads regularly serving the county agreed upon service areas. The Colonial Beach Squad continues to serve the "upper" one-third, the Montross Squad serves the "middle" one-third, and the Westmoreland Squad serves the "lower" one-third, with all calls for assistance now being dispatched through the Sheriff's Office.

In deciding that the Montross Squad should share in the estate, the chancellor noted: "At the time Miss Sanford made her will, the Westmoreland squad served approximately two-thirds of the Westmoreland County area, including those citizens in the Montross area. If that circumstance had not changed, then all these citizens would have benefitted from her bequest." Continuing, the chancellor stated: "A portion of those citizens can now benefit only if the Montross squad is included in this bequest. If the Montross territory is excluded, citizens in that area are denied the benefits of Miss Sanford's gift even though she herself did nothing to bring this about. It is true that her home is located in the area served by the Westmoreland squad, but this circumstance alone affords no basis to believe that she would want to exclude her neighbors living in the Montross area."

Commenting that volunteer rescue squads are "public service organizations" and relying on cases from other jurisdictions, the trial court concluded that "this is a charitable bequest, intended to benefit those citizens of the area served by the Westmoreland squad in 1977. This requires that these citizens presently served by Montross now be included. Therefore, the Westmoreland squad *and* the Montross squad should share this bequest."

On appeal, the Montross Squad maintains that the trial court was correct. We do not agree.

As the Westmoreland Squad argues, the trial court construed the words "the Rescue Squad - Hague, Westmoreland County, Va." to express a gift to a class of persons. The court expressly stated that the testator's "intent was to benefit, not an entity, but

a segment of the Westmoreland community served by that entity." This construction does not follow from the language of the will, nor is it supported by the evidence.

■ Rather, the language of the will and the evidence establish clearly that the testator intended specifically to designate the Westmoreland Squad as the sole residuary beneficiary. She employed the article "the," suggesting the name of a single entity. She capitalized the words "Rescue Squad," demonstrating an intent to name one particular entity as opposed to indicating an intent to refer generically to all rescue squads. She included a particular geographic location for the entity, "Hague, Westmoreland County, Va.," and the Westmoreland Squad is the only entity identified with that location. Indeed, she stated to the scrivener that the entity she intended to name was the Westmoreland Squad.

Accordingly, we hold the trial court erred in ruling that the testator intended for the Montross Squad to share in the distribution of her residuary estate. We will, therefore, reverse the decree below and enter a final decree here construing the will and establishing that the testator's intention was to bequeath the entire residue of her estate to the Westmoreland County Volunteer Rescue Squad.

*Reversed and final decree.*