# CIRCUIT COURT OF THE CITY OF ROANOKE

Murray A. Stoller
and Roscoe D. Hall,
Co-executors
under the will of
Mabel H. Andrews,
deceased

v.

Jack E. Andrews,
Michael E. Andrews,
and John Martin Andrews

May 26, 1997

Case No. CH95000757(R)

BY JUDGE CLIFFORD R. WECKSTEIN

Mabel H. Andrews died on March 28, 1994. Because it will be impossible for her executors to distribute her estate precisely as she directed, they seek judicial guidance and direction.

In her will, Mrs. Andrews gave, devised, and bequeathed:

all of the estate of which I may die seised and possessed or over which I may have the power of testamentary disposition, whether real, personal or mixed, in three equal shares, one share to our son, Jack E. Andrews, one share to our grandson, Michael E. Andrews, and one share to our grandson, John Martin Andrews, but in composing the three shares, Michael's share shall include the house, land, and

furnishings at 3212 Pineland Road, S.W., Roanoke, Virginia, and I specifically give, devise and bequeath the said home, land and furnishings to Michael in fee simple as a part of his share. In the composition of the shares the value of the items at the time of my death shall be considered and the decision of my Executor shall be final.

Mrs. Andrews' executors, Murray A. Stoller and Roscoe D. Hall, determined that her estate at the time of her death had a value of approximately $300,000.00. The "home, land and furnishings at 3212 Pineland Road" are worth approximately 55 percent of this total value of the estate. The house and land were appraised at $156,000.00, and the "furnishings" were valued at $8,650.00.

Obviously, then, if Michael E. Andrews receives the "home, land and furnishings," neither he nor either of the other named beneficiaries will receive a one-third equal share of Mrs. Andrews' estate. Equally obviously, a division of the estate into "three equal shares" would make it impossible for Michael to receive the home, land and furnishings which were "specifically give[n], devise[d] and bequeath[ed] ... to Michael in fee simple as a part of his share."

John Martin Andrews, one of the named beneficiaries, has offered to purchase the "home, land and furnishings" for their appraised value; to purchase additional assets from the estate; and to pay the executors the difference between one-third of the estate and the value of the assets purchased. If the executors are permitted to accept his offer, then they will be able to distribute one-third of the value of the estate to each of the other named beneficiaries. Michael, of course, would not then receive the "home, land and furnishings." The executors suggest that the offer should be accepted and the estate divided into equal shares. Michael disagrees, asserting that, under his grandmother's will, he is entitled to receive the Pineland Road property and its contents.

After carefully considering the oral arguments of counsel and the superb memoranda that they have filed, the relevant decided cases, and, most importantly, the will itself, I have concluded that the apparent dilemma created by Ms. Andrews' will must be resolved by division of her estate into "three equal shares," as she directed, even though this means that her grandson Michael will not receive the Pineland Road "home, land and furnishings" "as a part of his share." Before the executors accept John Martin's offer, however, Michael must have the opportunity to receive the "furnishings" "as a part of his share."

There are no material facts in dispute. One of the facts upon which all parties agree is that, on August 11, 1990, when Mrs. Andrews made her will, one-third of the value of her estate would have exceeded the value of the Pineland property and its contents. As the will recited, her husband, Marvin E. Andrews (who died before his wife), was a nursing home resident; Mrs. Andrews herself was "confined to our home and require[d] full-time assistance." The expenses of care for both Mr. and Mrs. Andrews had substantially depleted their assets by the time of Mrs. Andrews' death.

As the parties agree, this state of affairs created a "latent ambiguity." A latent ambiguity:

> does not appear on the face of the words used, nor is its existence known until those words are brought into contact with collateral facts. It is only when you come to apply the words bringing them alongside the facts which existed when used, and to read them in the exact light in which they were written that you make up the latent ambiguity.

*Hawkins v. Garland's Adm'r*, 76 Va. 149, 152 (1882). "A *latent* ambiguity is an uncertainty that arises entirely from the state of facts extrinsic to the will." 2 *Harrison on Wills and Administration*, 58 (3d ed. 1986). Normally, when a latent ambiguity exists, the chancellor may consider extrinsic evidence in an attempt to clarify the testatrix's intention. *Westmoreland Rescue Squad v. Melnick*, 243 Va. 222, 224, 414 S.E.2d 817 (1992); *Gillespie v. Davis*, 242 Va. 300, 303, 410 S.E.2d 613 (1991); *see Harrison, supra*, at 66. In this case, however, the parties' agree (as their memoranda demonstrate and their attorneys state in oral argument) that they have no extrinsic evidence to offer, beyond the agreed-upon facts concerning value at the time the will was signed and at the time of Mrs. Andrews' death, and of the reason for the depletion in value of her estate during the last years of her life.

"The paramount rule in will construction is that the testator's intention controls; the problem is to ascertain it. [Citation omitted.] This intention must be ascertained, if possible from the language of the document." *Westmoreland, supra*, 243 Va. at 224.

"All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial." *Wornom v. Hampton Normal & Agric. Inst.*, 144 Va. 533, 541, 132 S.E. 344 (1926).

If the court cannot clearly discern the intention of the testatrix from the language of the will itself, then the chancellor may apply "rules of

construction." One of these rules is that "[t]he general intent of a testator clearly and definitely expressed in his will prevails over a particular or special intent expressed in a part of it, *if it is impossible to give effect to both the general and the particular or special intent*." 2 Harrison at 28 (citing numerous leading Virginia cases). However, another rule is that "[t]he specific provisions of a will control over a provision that is general in nature. That is, bequests or devises to named individuals of determined shares control over a general provision repugnant thereto." *Id.* at 29.

The Court is satisfied that, whether one draws only upon the language of the will or one applies rules of construction, the result is the same, division of the estate into three equal shares.

Mrs. Andrews' intention appears clearly from the face of the will. "If upon reading of the whole, there appears to be a general scheme for the disposition of the property pervading as a whole, this general scheme will not be defeated by isolated clauses which may be susceptible to more than one interpretation." *Kling v. Virginia Trust Co.*, 215 Va. 226, 229, 205 S.E.2d 890 (1974).

There is, indeed, a pervasive general scheme. When Mrs. Andrews set out to dispose of her estate, she placed all of the dispositive language into a single sentence. She began that sentence by giving her property "in three equal shares," and went on to say that "*in composing the three shares*, Michael's share shall include" the Pineland property and its contents, which, she then provided, were given to Michael "in fee simple *as a part of his share*." (Emphasis added.) I am entitled to assume — and, indeed, I should and do assume — that the word "share" at the end of the disposing sentence means the same thing that it does when the term is first used in that sentence, *i.e.*, an equal third. Under "the paramount rule of testamentary construction, *viz*, that courts must give effect to what appears to be the intention of the testator unless to do so would offend some rule of law," *Powell v. Holland*, 224 Va. 609, 615, 299 S.E.2d 509 (1983), the general scheme of disposition developed by Mrs. Andrews must be honored.

Virginia has long followed the "doctrine which enjoins upon the expositor to look for the intention of the testator in the general tenor and context of the instrument and to qualify or even reject any clause or phrase that may be found incompatible with it; and though first expressed, *this general intent shall overrule the particular intent* afterwards disclosed." *Hooe v. Hooe*, 54 Va. (13 Gratt.) 245, 251 (1856), as quoted in *Picot v. Picot*, 237 Va. 686, 689-90, 379 S.E.2d 364 (1989) (emphasis added by Senior Justice Poff in the *Picot* opinion). In this case, the expositor (the chancellor) has no need to qualify the potentially incompatible clause or phrase; Mrs. Andrews has done so by making the specific gift to Michael "a part of his share." Applying the

rules of construction, it is obvious that the testatrix's general intent is clear and definite, and that the specific gift to Michael, as qualified by the words of the will and its placement within the dispositive sentence, is not repugnant to the general provisions for distribution.

Michael relies, in part, on *Price v. Cole's Ex'x*, 83 Va. 243, 2 S.E. 200 (1887). I agree with the executors that *Price* supports the conclusion that I have reached in this case. In *Price*, the Court notes that "[i]t is definitely settled as a rule of law that, where there is a particular and a general or paramount intent, the latter shall prevail, and the courts are bound to give effect to the paramount intent." *Id.* at 346 (citing the Lord Chancellor of England). Quoting the court of chancery of New York, Virginia's Supreme Court observed "that the principle that the last provision in the will can be considered as evidence of a final intention of a testator is more fanciful than sound." *Id.* at 347. *Cf. Picot v. Picot, supra*, 237 Va. at 689-90. In the case at bar, as in *Price*, "[t]he will is upon the same piece of paper, and written apparently upon the same day, and in this case it would be, as is observed by Chancellor Walworth [of New York], fanciful rather than sound to undertake to say that the [testatrix] changed [her] mind since writing the first part of the [dispositive language] of the will. The [testatrix] must be held to mean, as [s]he doubtless did, 'Having regard to the first provision in my will, I now, secondly, provide,' etc." *Price,* at 347-48.

Michael also relies upon *Waring v. Bosher*, 91 Va. 286, 21 S.E. 464 (1895). I agree with the executors that the facts of *Waring* distinguish that case sharply from the case at bar. *See Wornom v. Hampton Normal & Agric. Inst., supra*, 144 Va. at 542.

Honoring Mrs. Andrews' clearly expressed general intention to divide her estate into equal thirds does not, under the facts as the parties have stipulated them, require that her specific instructions for the composition of Michael's share be ignored entirely. Although it is not possible for Michael to receive the "home" and the "land" at Pineland Road as a part of his one-third share, the "furnishings" have a value ($8,650.00) that is well within one-third of Mrs. Andrews' $300,000.00 estate. It seems elementary that the chancellor should conform the administration of Mrs. Andrews' estate as nearly as possible to her expressed intentions, that the estate should be distributed in such a manner as to give the greatest possible effect to each word that Mrs. Andrews employed in her will. *Cf. Stringfield v. Magee-Parker*, 212 Va. 144, 146, 183 S.E.2d 197 (1971); *Jarrett v. McReynolds*, 212 Va. 241, 244, 183 S.E.2d 343 (1971).

It is too facile, however, simply to say that, though Michael *cannot* receive one-third of the real property at Pineland Road, he *must* take the furnishings as a part of his share of his grandmother's estate.

This is a suit in equity, and the chancellor has always the duty to see that "substantial justice" or "complete justice" is done. "It has many times been said that the primary object of a court of equity is to do complete justice. *Laurel Creek Coal & Coke Co. v. Browning,* 99 Va. 528, 39 S.E. 156; *Vaught v. Meador,* 99 Va. 569, 39 S.E. 225, 86 Am. St. Rep. 908; *Shield v. Brown,* 166 Va. 596, 186 S.E. 33." *Chapman v. Delk,* 178 Va. 113, 121, 16 S.E.2d 379 (1941); *cf. Millman v. Swan,* 141 Va. 312, 127 S.E. 166 (1925). "Equity looks at the substance of a transaction and not its mere form." *Virginia Machinery & Well Co. v. Hungerford Coal Co.,* 182 Va. 550, 29 S.E.2d 359 (1944).

There is a doctrine called "equitable approximation," a relative of the more familiar *cy pres* doctrine. While *cy pres* applies where an apparent charitable intention has failed, and its purpose is to give a *cy pres* (or "as near as possible") application to the testator's intention, the doctrine of approximation authorizes a court of chancery to vary the details of administration, in order to carry out the general purposes of the testator. The Virginia Supreme Court has recognized that equitable approximation is a valid doctrine under the law of Virginia, *see Baliles v. Miller,* 231 Va. 48, 56, 340 S.E.2d 805 (1986); *Campbell v. Board of Trustees,* 220 Va. 516, 525-26, 260 S.E.2d 204 (1979); *Thomas v. Bryant,* 185 Va. 845, 852, 40 S.E.2d 487 (1946), though the Court has never considered the application of the doctrine in a context such as this one.

I am of the opinion that equitable approximation appropriately is applied here. The Chancellor finds that, in this case, in order to do equity and to carry out the general purposes of Mrs. Andrews to the greatest degree possible, it is necessary to give Michael the option whether to take the "furnishings" as part of his one-third share (at the value assigned to them by the executors, subject to any agreed-upon revaluation). If he chooses to do so, then the executors of Mrs. Andrews' estate may proceed appropriately; if he chooses not to do so, then (whether by acceptance of John Martin Andrews' offer or otherwise), the executors likewise may proceed appropriately to divide the estate into three equal shares.